———————o o o———————

FRENCH AND HEISER *vs.* THE MAYOR &C. OF NEW YORK.

The covenants in a lease were, that on the last day of the term the lessees would surrender the demised premises, "and all the improvements that may have been placed thereon by the said" lessees, "and which improvements are to belong to" the lessors, "*and all of which* are to be surrendered up in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted." *Held* that the parties intended, the one to surrender, and the other to receive and accept, at the termination of the lease, all the improvements which should be placed thereon by the tenants during the lease; and that such improvements embraced all additions, erections or alterations made by the tenants during the term, and such as were used by them in the enjoyment of the lease. And that, on the expiration of the term, the improvements became the property of the lessors, who had a right to retain them.

ON the 28th of March, 1843, the defendants leased to the plaintiffs the premises known as "Castle Garden," for eleven years from May 1st, 1843, at an annual rent of $2000.

The lease contained this clause: "And that on the last day of the said term, or other sooner determination of the estate hereby granted, the said parties of the second part, their executors, administrators or assigns, shall and will quit and surrender unto the said parties of the first part, their successors or assigns, the premises hereby demised, and all the improvements that may have been placed thereon by the said parties of the second part, their executors, administrators or assigns, which improvements are to belong to the said parties of the first part, their successors or assigns, and all of which are to be so surrendered up in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted." On the 1st of May, 1854, the term of the plaintiffs under the lease expired.

Before the expiration of their term, the plaintiffs began to remove certain articles from the premises. An injunction was obtained by the defendants, April 15, 1854, restraining the plaintiffs from removing or displacing "gas fixtures, benches, glasses and windows, partitions, floors, counters, or the materials derived from tearing down any of the aforesaid fixtures, or from tearing down the stage, or any other improvement in said building." The action was subsequently discontinued.

This action was brought to recover the value of "gas pipes, burners, gas ladders, and two large and one small meters, lumber in hat room, fifteen batten doors, hinges and locks, floor of stage, large glass case, benches in gallery, benches under gallery upholstered, wood work and canvas constituting the stage, gas pendant under gallery, picket fence on the bridge leading to the garden, sheds on the north and south sides of the building, fixtures and ticket office, board fence on the north side of the building, which are alleged to have been converted by the defendants."

A verdict was taken for the plaintiffs for $4431.25, subject to the opinion of the court.

French *v.* Mayor &c. of New York.

*Wm. M. Evarts* and *R. H. Bowne,* for the plaintiffs.

*R. Busteed* and *A. R. Lawrence, Jr.,* for the defendants.

*By the Court,* DAVIES, J.   The question in this case is not, what are fixtures which a tenant is at liberty to remove on the expiration of his lease ? but, what did the lessees covenant with the lessors they would surrender and suffer to remain on the demised premises on the termination of the lease ?

The covenants of the lease are, that on the last day of the term the lessees will surrender the demised premises, " and all the improvements that may have been placed thereon by the said parties of the second part," (the lessees ;) " and which improvements are to belong to the said parties of the first part," (the lessors ;) " *and all of which* are to be surrendered up in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted."

The terms of the lease are therefore very broad, and would seem to comprehend all and every erection, improvement or addition made, put or erected upon said premises during the continuance of the lease.   It was manifestly in contemplation of the parties to the lease, at the time of making it, that extensive improvements, changes or alterations, were to be made by the lessees to adapt the demised premises to such uses and purposes as they might wish to put them to, and that these alterations and improvements were to be made at the expense of the lessees.

The lessors consented to such alterations and improvements, on condition that at the expiration of the lease they were to belong to and become the property of the lessors; and the lessees agreed, in consideration of such permission to make alterations, repairs and improvements, on the expiration of the lease, to surrender them up in as good state and condition as reasonable use and wear thereof would permit.

The covenant is to surrender *all* the improvements that may have been placed thereon.   Improvements clearly, as the

word is here used, embrace every addition, alteration, erection or annexation made by the lessees during the demised term, to render the premises more available and profitable, or useful or convenient to them.   It is a more comprehensive word than "fixtures," and necessarily includes it, and such additions as the law might not regard as fixtures.   It would be difficult to select a more comprehensive word ; and where the parties say that all improvements which may be placed on the premises shall belong to the lessors, it is difficult to say what, if any thing, would be excluded.

Such, we think, is the view taken by the common pleas of England, in a case not dissimilar to the present.   (*West* v. *Blakeway*, 2 *Manning & Granger*, 727.)   In that case the tenant had covenanted to yield up at the expiration of his term all erections and improvements erected, made or set up during the term ; and it was held that this covenant was broken by the removal of the sashes and frame-work of a green-house erected during the term, the frame-work of which was laid upon walls built for the purpose of receiving it, and embedded in mortar thereon.   The judges thought the parties had intentionally adopted the words, "erections and improvements," for the very purpose of avoiding all discussions as to what might be considered as coming within the description of a fixture.   It is very apparent that the court, in that case, did not place their judgment on the assumption that the green-house was a fixture, but on the covenant to surrender all erections and improvements, and that those words were more comprehensive than fixtures.

We think the parties in this case intended. the one to surrender, and the other to receive and accept, at the termination of the lease, all the improvements which should be placed thereon by the tenants during the lease, and that such improvements embraced all additions, erections or alterations made by the tenants during the term, and such as were used by them in the enjoyment of the lease.   On its expiration

the improvements became the property of the lessors, and they had a right to retain them.

It is difficult to see, upon the principles here enunciated, that any of the articles enumerated in the complaint in this action are not embraced in the covenants of the plaintiffs to surrender them. If any of them are not, then the plaintiffs will be entitled to recover for such, and such only.

A new trial must be had; costs to abide the event.

[NEW YORK GENERAL TERM, May 2, 1859. *Roosevelt, Davies* and *Ingraham*, Justices.]