POND MACHINE TOOL COMPANY *vs.* JABEZ M. ROBINSON.

March 15, 1888.

**Mechanics' Liens—Operation of Statute—Repeal.**—Laws 1887, *c.* 170, providing for liens in certain cases, is by its terms prospective in its operation.    It repeals inconsistent acts, but does not expressly repeal Gen. St. 1878, *c.* 90.    Contracts previously made are governed by the former statute, which so far remains operative, and may stand consistently with the new act.

**Same—For What Given—Machinery.**—Under Gen. St. 1878, *c.* 90, § 1, the introduction into a shop of additional permanent and stationary machinery for use therein may subject the premises to a lien for the purchase price.

**Conditional Sale—Delivery—Waiver.**—Where by the terms of a contract for the manufacturing and delivery of machinery, it was to be delivered on cars in another state, consigned to a purchaser in this state, and the notes of the latter for the purchase price were to be executed on the delivery of the property, *held,* that the fact that the same was forwarded to the consignees in this state before the receipt of the notes, was not necessarily a waiver of the conditions of the sale, or of the right of the consignor subsequently to reclaim the actual possession of the property, upon default of the consignee to deliver the notes as agreed.

**Fixtures in Machine-Shop.**—The findings of the trial court that the machine in controversy here was a fixture in the machine-shop referred to in the record, and was furnished for use therein in pursuance of a contract with the owners thereof, and that the absolute and final delivery of such machine was made in this state, *held* supported by the evidence.

Plaintiff, a Massachusetts corporation, brought this action in the district court for Hennepin county against the defendant Robinson,

as assignee in insolvency of the Pray Manufacturing Company, and other defendants, to establish and enforce a lien upon the machine-shop of that company and its appurtenances for the price of an iron planer.  The assignee defended on the ground (1) that the machine was sold and delivered, not in this state, but in Massachusetts, and was not ordered or furnished for, or used in, "altering" the company's machine-shop; and (2) that any right to a lien which plaintiff might have had under Gen. St. 1878, *c.* 90, was taken away by the repeal of that chapter by the general repealing clause in Laws 1887, *c.* 170. The action was tried by *Hicks*, J., who found the facts stated in the opinion, and ordered judgment for plaintiff.  A new trial was refused, and the defendant Robinson appealed.

*M. B. Koon* and *A. B. Jackson*, for appellant.

*Selden Bacon*, for respondent.

VANDERBURGH, J.  1. The mechanic's lien law of March 20, 1858, (Laws 1858, *c.* 53,) applied to "every person who shall have a claim for materials furnished or services rendered in the construction, erection, or repair of any dwelling-house," etc.  The act of August 12, 1858, (Laws 1858, *c.* 54,) provided that any person who shall have performed, or may hereafter perform, labor, etc., by virtue of a contract with the owner, etc., shall have a lien as thereby provided. By section 17: "In all cases where liens have been filed under pre-existing laws, the same may be prosecuted to final judgment under such law; and in all cases where the right to liens has accrued as provided in this act, the same may be prosecuted in accordance with the provisions of this act."  By section 19 all acts and parts of acts inconsistent therewith were repealed.  This act, therefore, was made applicable both to existing and future claims, but limited the lien to cases where the work was performed or materials furnished by virtue of a contract with the owner, except that all liens, of whatever class, which had been filed, were saved and were to be prosecuted under the pre-existing statute.  It is clear that the court in *Toledo Novelty Works* v. *Bernheimer*, 8 Minn. 92, (118,) were right in holding that, except as to liens expressly saved, the act of March 20th was repealed by the act of August 12, 1858.  The purpose of the legislature was made very clear to provide a lien for a certain class

of claims, past or future, and no others. The existing law was, by clear implication, not continued in force in respect to claims not included in the class specified. The plaintiff's claim in that case did not belong to that class, nor to the class for which provision was made by the new statute. He was therefore rightly denied relief.

This statement is made because that case is cited as an authority here for the proposition that Gen. St. 1878, c. 90, was repealed by Laws 1887, c. 170, and that the plaintiff is not, therefore, entitled to a lien in this case, and in order to show the distinction between the two cases. The act of 1887 provides (section 1) "that on and after the passage of this act, all labor performed  *  *  * shall be a first lien," and (section 2) "all material furnished  *  *  * shall be a second lien." Sec. 4. Liens must be filed within 90 days after labor performed or materials furnished. And section 12 repeals inconsistent legislation. Of the two classes of claims, existing and future, this act purports to provide only for the latter. No mention or provision is made for the former. The existing statute on the subject is not expressly repealed. It is clearly inconsistent with the provisions made for future liens by the act of 1887. It is not so clear that, as to claims existing at the time of the passage of the last act, the former is necessarily repealed. The new act is expressly made prospective. Full effect may be given to it, and the old statute remain operative. The legislation is remedial in its character, and since no attempt is made in the new act to make provision for past cases, it will not be presumed that it was the intention of the legislature to supersede the old statute as to them. So far at least the statutes are not inconsistent. *Conner* v. *Lewis*, 16 Me. 268, 273. The repeal of inconsistent legislation extends no further than the subject-matter of the act, which relates only to future claims. The distinction between *Toledo Novelty Works* v. *Bernheimer* and the case at bar is the same as that recognized by the Maine supreme court between *Bangor* v. *Goding*, 35 Me. 73, (56 Am. Dec. 688;) and *Conner* v. *Lewis, supra*. We are of the opinion that the plaintiff may prosecute his lien under the General Statutes if otherwise entitled to it.

2. The findings of fact as to the delivery of the machine in ques-

tion, and that it was manufactured and furnished for the machine-shop of the Pray Manufacturing Company in the city of Minneapolis, are, we think, sustained by the evidence; and as bearing upon these questions the evidence of the correspondence and negotiations of the parties was properly admitted.  The reception of that portion of the testimony of the witness Pond which might be deemed objectionable as tending to vary the written contract, was error without prejudice, in view of the fact that there is no dispute in respect to the contract.

The evidence shows that the Pray Company were in need of such a machine for use in the business of their shop.  The officers of the plaintiff corporation were informed of the nature of the shop of the Pray Company, and the machinery in it, which had been described to them; and it is clear, from the circumstances under which the machine was ordered and the negotiations between the parties, that it was built for the works of the latter company, and consigned and shipped directly to them at Minneapolis, as intended by the parties.  It was accordingly set up in the machine-shop in a place prepared for it, and properly adjusted so as to run and be operated in connection with the other machinery in the shop.  It was an enormous planer, of many tons' weight, and needs no supports other than the foundation prepared for it.  It is found that in order to set up the machine it was necessary to cut pits in the floor for the gearing.  It is not bolted down, but is held in its place by its own weight,— 76,000 pounds.  The building in which it was placed was specially constructed for a machine-shop, 200 feet long and 50 feet wide, and had a large amount of machinery in it specially for that business.  From the main shafting in the building a belt was run to the counter-shafting, which belongs to and is a part of this machine.  The counter-shafting was bolted firmly to cross-ties, which were supplied by the Pray Company, and the cross-ties fastened to the girders of the roof by bolts.  It was intended for permanent use in the shop in the business of the company, and was accessory to it and a necessary supplement to the other machinery.  The court also finds that the business of the company was such that it could not be properly carried on without this machine, and "that the machine was of such a nat-

ure as to change the character and kind of work which the Pray Company could execute in its shop at Minneapolis." From the evidence it appears that the company were extensively engaged in the manufacture and preparation of heavy mill machinery, and that for certain departments of the work this planer was required. The machine was properly designated as a fixture in the shop, such as to subject the latter to a lien for the price, within the provisions of Gen. St. 1878, c. 90, § 1. *Wolford* v. *Baxter*, 33 Minn. 12, 18, (21 N. W. Rep. 744;) Phil. Mech. Liens, (2d Ed.) § 175. The language of the statute is: "Whoever furnishes materials or machinery for erecting, constructing, altering, or repairing any house, mill, manufactory, or other building or appurtenances, shall have a lien to secure the payment of the same upon such house, mill, manufactory, or other building and appurtenances." There can be no doubt that the introduction into a shop or factory of additional permanent and stationary machinery, for use therein, of the character indicated by the evidence here, brings the case within the provisions of this statute.

The court also finds "that the machine was delivered to the Pray Company at Worcester, in the state of Massachusetts, conditionally, on the 14th day of June, 1886, and that the plaintiff made absolute delivery thereof to the company in Minneapolis on the 23d day of July, 1886, the said conditional delivery having been contingent upon the giving by the Pray Manufacturing Company of its notes therefor." We think this conclusion, which is not, however, altogether a question of fact, is substantially supported by the record. The business between the parties was chiefly conducted through the mail and by telegraph. The order of the Pray Company asked "for the best tool you can make, fully warranted, to do perfect work, and a large amount of it; so adjusted and fitted that it can be operated without heating any of its parts;" and requested the right to give six months' note, "with right to renew three times, on paying part of it as we renew from time to time." The answer closing the contract fixed the price at $6,077, "free on board cars here; six months' note, interest added, with right to three renewals if desired." The Pray Company were anxious for an early completion of the machine to use in their business, and accordingly, as soon as it was completed, it was shipped

to Minneapolis by rail consigned to them, and shipping receipt immediately forwarded to them, together with invoice by mail June 16, 1886. The plan of the planer was by mistake omitted, and on request was forwarded June 30th. The machine had already arrived at its destination some time before the last date, and on July 3d the plaintiff forwarded six months' acceptance for amount of price and interest, to be executed and returned. The Pray Company, however, delayed until the planer was set up and tested, claiming that right before final acceptance of it. This the plaintiff assented to as reasonable, and it was in accordance with the original understanding that it was to be sent subject to approval, though it was not so expressed in the contract as finally concluded. On the 23d of July, however, the Pray Company executed and forwarded note for $4,000, at six months, and subsequently, on August 23d, a note for the balance, at five months, deducting from the price $1.50 for one small piece, one of the parts of the machine, omitted, and the account was finally adjusted and receipted as "settled by the two notes," at $6,075.50, on August 23, 1886. In this case, by the terms of the contract, the plaintiff was entitled to claim a delivery of the notes as stipulated upon the delivery of the machine. We do not think the condition was necessarily waived by the shipment. The invoice was promptly forwarded to the purchasers, and the plaintiff might expect performance on their part upon reasonable notice or, if an opportunity was claimed and given to inspect and test the machine before acceptance, within a reasonable time thereafter. Whether there was a waiver of this condition was a question of fact, and the court has found that there was not; and it is sufficient if the intent of the parties can be gathered from the circumstances of the case. *Osborn* v. *Gantz*, 60 N. Y. 540; *Stone* v. *Perry*, 60 Me. 48; *Fishback* v. *Van Dusen*, 33 Minn. 111, 118, (22 N. W. Rep. 244.) The fact that the goods are actually forwarded to the purchaser before compliance by the latter is not necessarily a waiver of the conditions of the sale; and in such cases where goods are shipped in anticipation that the notes stipulated for in the contract will be promptly forwarded on receipt of the goods, the seller may resume possession if the buyer refuse to deliver the notes upon demand. *Osborn* v. *Gantz, supra;*

*Stone* v. *Perry, supra; Farlow* v. *Ellis,* 15 Gray, 229; *Armour* v. *Pecker,* 123 Mass. 143. It must be assumed, then, for the purpose of this case, that the transaction was closed, and the machine finally accepted and delivered, in Minnesota, when it passed under the absolute control of the defendants. It is not necessary, therefore, to consider the question whether or not, if the delivery on the cars had been absolute, it would have made any difference in the result; that is to say, if the notes had been delivered in Massachusetts when the machine was shipped, and the same had been thereafter forwarded and placed in the shop as originally intended.

The court was also clearly right in holding that the original claim was not extinguished by the receipt of the notes. *Ford* v. *Mitchell,* 15 Wis. 304, and cases cited; *Eastman* v. *Porter,* 14 Wis. 39, 47, 48; *Paine* v. *Voorhees,* 26 Wis. 522. The existence of the notes did not prevent the plaintiff from filing his lien. They are overdue, and have never been renewed; and if they had been, the time of payment would not have been extended beyond the statutory limit for enforcing the plaintiff's lien.

Order affirmed.