# WHITE ENAMEL REFRIGERATOR COMPANY v. EDNA D. KRUSE.[1]

February 21, 1913.

Nos. 17,947—(230).[2]

**Mechanic's lien — florist's refrigerator.**

A florist's refrigerator, caused to be erected by a tenant in a storeroom in a hotel building, such room having been leased by a hotel company, the lessee of the whole building, to the tenant for a flower, candy, and soft drink store, *held*, upon the facts of the case, to be a "trade fixture," and not an "improvement" or "fixture," within the mechanic's lien statute (R. L. 1905, § 3505); and hence the hotel property was not lienable for the value thereof.

Action in the district court for Hennepin county against Edna D. Kruse, the Radisson Shop Company, the trustee in bankruptcy of that company, and others, to obtain judgment against certain of the defendants for $856.56 and foreclose a lien for the same upon certain premises. The separate answer of Edna D. Kruse, among other matters, denied that the installation claimed to have been made by the plaintiff had become a part of the realty, but on the contrary the answering defendant alleged that it was a chattel personal, wholly detached and separate from the real estate described. The action was tried before Steele, J., who made findings, as stated in the opinion on page 482, infra, and ordered judgment in favor of plaintiff. From an order refusing to amend the findings and denying a new trial, defendant E. D. Kruse appealed. Reversed.

[1] Reported in 140 N. W. 114.          [2] October, 1912, term calendar.

*Henry E. Barnes* and *Frank W. Booth,* for appellant.
*W. S. Chase,* for respondent.

PHILIP E. BROWN, J.

When the Radisson Hotel, in Minneapolis, was erected, its owner, the defendant Mrs. Edna D. Kruse, left a front corner of the building, especially suitable for a store, in a rough state, with plain plaster walls, rough cement floors, no door or window casings, and no decorations, top flooring, wall wainscoting, or paneling. Thereafter the defendant leased the entire building to the Radisson Hotel Company, a corporation formed at her instance and of which she was secretary, to carry on the business of conducting the hotel for an extended period. This company, with her approval, leased the front corner to the Radisson Shop Company for 10 years; the lease providing, among other things, that the storeroom should be used during the term by the lessee "for the purpose of conducting therein a candy, flower, ice cream, and soda water business, and business akin thereto, and for no other business whatsoever." The lessee covenanted to install the usual and necessary fixtures, fountains, and installation customarily installed in high-class candy and soft drink refreshment parlors; "it being understood and agreed that all fixtures so installed shall be held as collateral security by said lessor for the payment of rents due, or to become due, on this lease, the same to be used and controlled by the lessee during the term of this lease, with the right to repair and exchange for other fixtures of equal value." By the terms of the lease the lessor agreed to plaster the room, to lay a floor of a certain kind, and to paint the side walls and ceiling, and to install electric light ceiling fixtures at the outlet boxes, which were to be the property of the lessor. The lessee assumed the obligation of installing and maintaining electric lamps and lights and reflectors, and also the necessary wiring for window and wall illumination. The lessor agreed to install a balcony in the rear of the store to the satisfaction of the lessee in both detail and design, at a cost of not more than $600, the same, however, to be considered the property of the lessor, provided that, in the event that the lessee desired a more expensive balcony, it should have the

option to accept the amount stated and install such balcony as it might prefer. The lessor agreed to bring to the floor level of the store sewer and water pipes; the lessee agreeing to make all plumbing and sewer connections at its expense.

The shop company fitted up the room with walnut paneling and finish, putting in a marble base, window display ledges, and a "U"-shaped balcony around the rear of the room, building it by channeling the supporting joists into the masonry of the building, and attaching it to the ceiling by expandable bolts. All the exposed parts of the balcony were covered with walnut, including the under side of the ceiling, except above the refrigerator as hereinafter mentioned. The lessee also laid a tiled floor.

The plaintiff, at the instance and request of the shop company, built in the storeroom a florist's refrigerator, made upon a special order, 16 feet and 9 inches wide, 3 feet and 6 inches deep, and 7 feet and 3 inches high, together with a tiled floor and drawers separately constructed to fit in, and this refrigerator was installed between two of the supporting pillars of the building, which projected into the store space. Extra strong posts were used in its construction, in order "to help support the balcony under which it stood, against the side of the building," thus increasing the expense of its construction, and the underside of the balcony ceiling was omitted in the space occupied by the top thereof. It was built especially for flowers, and weighed from 4,000 to 6,000 pounds. It was designed to match the finish of the room and the wall paneling and balcony, having the appearance of being a continuation of the wall paneling. The marble base of the room was continued around the base of the refrigerator, inclosing it against the wall. Likewise, the molding in the angle formed by the under side of the balcony and the wall of the room, and which was 4 or 5 inches each way in size, ran along one side and the front of the refrigerator, inclosing it against the wall of the building. It was not attached to the floor or to the vertical walls of the building, but was connected with the balcony by a molding, and contained electric lights, current being supplied from the lighting plant of the building, and a sink connecting with the city sewer was supplied to collect the drip. The

121 M.—31.

tiled floor of the room abutted against its base, and the room was decorated after the refrigerator was placed in position, but the space behind it remained undecorated.

Subsequently the plaintiff duly filed a statement setting forth a claim of lien for the value of the refrigerator, and this action for its foreclosure followed. The trial was to the court, which made findings substantially in accordance with the facts stated, but in greater detail, omitting, however, the provisions of the lease between the hotel and shop companies and some undisputed facts which we have recited. Judgment was ordered in favor of the plaintiff and against the shop company, and also for a lien on the hotel property for the value of the refrigerator. In addition to the facts recited, the court found that the refrigerator, its floor, etc., and its installation, were reasonably worth $856.56, but did not find that it was a fixture, refusing, however, to find, on the defendant's application, that it was not such, and also to make amended and additional findings. While the findings are criticised by the defendant, none of them are challenged, except those relating to value, and that the lease to the shop company was made with Mrs. Kruse's approval. She appealed from the order of the court refusing to find as aforesaid, and from its order denying her a new trial.

1. The only question we find necessary to determine in this case is whether the refrigerator was an "improvement" or "fixture," within R. L. 1905, § 3505, providing that: "Whoever contributes to the improvement of real estate by performing labor, or furnishing skill, material, or machinery, for any of the purposes hereinafter stated, whether under a contract with the owner of such real estate or at the instance of any agent, trustee, contractor, or subcontractor of such owner, shall have a lien upon said improvement, and upon the land on which it is situated or to which it may be removed, for the price or value of such contribution; that is to say, for the erection, alteration, repair, or removal of any building, fixtures, bridge, wharf, fence, or other structure thereon," etc.

In other words, the question is whether this refrigerator was a fixture in the legal sense of that word, or was a mere so-called trade-fixture. Pond Machine Tool Co. v. Robinson, 38 Minn. 272, 276,

37 N. W. 99. If it was the former, then the trial court's decision was right; otherwise, not. We will assume that Mrs. Kruse must be deemed to have consented to the erection of the refrigerator in the store, and also that the fact that such was done by a lessee or sublessee is immaterial, except as bearing upon the question stated.

What, then, is a fixture under the statute? The nearest approach to a satisfactory definition of this term we find in Wolford v. Baxter, 33 Minn. 12, 21 N. W. 744, 53 Am. Rep. 1. The question there was between mortgagor and mortgagee, but the discussion covers the constituent features of fixtures generally; and if the refrigerator here involved was not a fixture as between the owner and the tenant, it was not lienable. Such is the general rule. Rockel, Mechanics' Liens, § 14. Indeed, what is laid down in Wolford v. Baxter, supra, has been applied by this court in determining whether machinery constituted a fixture, within the mechanic's lien law. See Pond Machine Tool Co. v. Robinson, supra.

We will therefore first quote the pertinent part of the opinion in the Wolford case, from which the rule here to be applied is to be deduced, for it cannot be said that the case categorically declares a rule. "It has often been remarked," said Mr. Justice Mitchell at page 17, "that the law of 'fixtures' is one of the most uncertain titles in the entire body of jurisprudence. The lines between personal property and fixtures are often so close and so nicely drawn that no precise and fixed rule can be laid down to control all cases. It is difficult, if not impossible, to give a definition of the term which may be regarded of universal application. Each case must be more or less dependent upon its own peculiar facts. Whether a thing is a fixture or not has been sometimes said to be a question partly of law and partly of fact. Almost every court and every text-writer has attempted to define the term. None of these definitions are infallible or of universal application; but they are of service in determining whether an article is or is not, in a given case, a fixture. These definitions may be found collected in almost any law dictionary or text-book on the subject. We shall neither quote them nor attempt to give a definition of our own, but simply say that they all agree that 'fixtures,' in the primary meaning of the term (and distinguished

from movable or tenants' fixtures), mean chattels annexed to the realty, so as to become a part of it. While not agreeing as to the necessity for, or the degree of importance to be attached to, the fact of actual physical annexation, yet the authorities generally unite in holding that, to constitute a fixture, the thing must be of an accessory character, and must be in some way in actual or constructive union with the principal subject, and not merely brought upon it; that in determining whether the article is personal property, or has become a part of the realty, there should be considered the fact and character of annexation, the nature of the thing annexed, the adaptability of the thing to the use of the land, the intent of the party in making the annexation, the end sought by annexation, and the relation of the party making it to the freehold."

"To make it a fixture," the opinion continues on page 18, "it must not merely be essential to the business of the structure, but it must be attached to it in some way, or, at least, it must be mechanically fitted, so as, in ordinary understanding, to constitute a part of the structure itself. It must be permanently attached to, or the component part of, some erection, structure, or machine which is attached to the freehold, and without which the erection, structure, or machine would be imperfect or incomplete."

We have quoted thus lengthily from this case, because it is a ruling one, containing a well-nigh complete commentary, and the part of the opinion quoted furnishes the most workable rule that we have been able to find. Let us, now, apply this rule to the case before us, remembering that its major premise is that each case must be determined upon its own facts. See, also, Ewell, Fixtures (2d ed.) 35, 47.

The attachment of the refrigerator might, perhaps, be held sufficient to satisfy the requirement of annexation, but was not of such character as of itself to warrant a finding of a fixture, or to import the other essential elements thereof; for it was but slightly attached to the building, and was readily removable with slight, if any, injury to the building. It appears that it was in fact removed by the lessee's assignee in bankruptcy; and since it was put in before the room was completed, and nothing in the way of further finish was done to the

space behind it, or occupied by it, except to extend the molding and the marble baseboard around it, its removal left this part of the room in practically the same condition in which it was before it was put in.

That a so-called fixture is removable with little injury to the build-is an important consideration in this connection. Northwestern Mutual Life Ins. Co. v. George, 77 Minn. 319, 326, 328, 79 N. W. 1028, 1064; Medicke v. Sauer, 61 Minn. 15, 16, 63 N. W. 110; Pioneer Savings & Loan Co. v. Fuller, 57 Minn. 60, 63, 58 N. W. 831. So, also, the fact that the refrigerator was installed by a tenant tends to the conclusion that it was a trade fixture. Shapira v. Barney, 30 Minn. 59, 14 N. W. 270. That it was not removable without being taken to pieces, and was worth less when removed, are circumstances to be considered, but are not conclusive. Ewell, Fixtures (2d ed.) 151. Nor is the fact that it was built extra strong, so as to strengthen the balcony under which it stood, determinative. This was merely an incidental matter, only very slightly connected with the purpose of the installation, which would doubtless have been made, even if there had been no balcony, and, in any event, the use of the one was not dependent upon that of the other.

The nature of the thing annexed and its adaptability to the use of the realty—which in this case we will consider to be the store-room—constitute the next element to be considered. It cannot be questioned that the refrigerator was adapted to the use of the room as a flower store, for it was built for use in such business while being conducted in this room; but no less certain it is that this adaptability was of limited scope, whereas there is nothing to show that the room was not fitted for many purposes other than those for which it was leased. We think it fair to assume that the room was suited to any of the purposes for which one of its size and similar location might ordinarily be used. In the matter of character and adaptability, therefore, we think the refrigerator partook of the nature of a mere trade fixture.

"The intent of the party in making the annexation" "and the relation of the party making it to the freehold" constitute the third test under the rule which we are applying, and these elements may

be considered together. In the terms of the lease, the substance of which we have set forth in the statement of facts, we find no indication that it was the intent of the parties that the refrigerator should be the property of the lessor. It was not specifically mentioned in the lease; but it was a proper installation for a flower store, bearing, we might say, the same relation thereto that the soda fountain bore to the soft drink refreshment parlor. It must, therefore, be classed with the "necessary fixtures, fountains, and installation customarily installed in high-class candy and soft drink refreshment parlors," all of which, under the terms of the lease, were clearly regarded by the parties as trade fixtures, as distinguished from the wall decorations, floor covering, balcony, etc., which the lessor undertook to furnish; it being, furthermore, expressly stipulated in the contract that "said balcony at all times is to be considered as the property of the lessor," thus indicating that the installations to be made by the lessee were not so to be considered. Moreover, is it reasonable to assume that the lessee intended to make the lessor, or the owner of the building, a present of so expensive a structure at the end of the term, even though the same was for a long period, when the parties so carefully stipulated as to whom the balcony, of lessor cost, was to belong? See Shapira v. Barney, supra. We think it was the intent of the parties that any such so-called fixture as this refrigerator should be deemed to be a trade fixture.

Finally, was the store room complete without the refrigerator? We might readily answer this question in the negative, were we to consider the room as suitable only for a flower store; but, since we cannot so conclude, the contrary answer must follow. We hold that this refrigerator was a mere trade fixture, and hence that the hotel property is not lienable therefor. See Shapira v. Barney, supra; Pioneer Savings & Loan Co. v. Fuller, supra; Medicke v. Sauer, supra; Northwestern Mut. Life Ins. Co. v. George, supra; Stout v. Stoppel, 30 Minn. 56, 14 N. W. 268.

We have not cited cases from other states, because the very nature of a case which must be determined upon its own facts renders such citation of small value. A case has been cited by the appellant,

however, which, by reason of the close parallel of its facts to those in the one before us, has a persuasive value.

In Kimball v. Grand Lodge, 131 Mass. 59, it was held that two large cases, each 10 feet high and between 30 and 40 feet long, having shelves and drawers and mirrors inserted, with a cornice on top and a molding at the bottom, which had been placed in a shop by a tenant, did not constitute a part of the realty, though they occupied places for which they were made, and were held in position by nails 2 or 3 inches long, driven through the wooden backs of the cases into the plastering and woodwork behind and around them. The cases rested on a marble floor, which had been completed before they were put in; but the baseboard of the room did not extend behind them, coming only up to the molding at their base. After they were in place, the ceiling of the room, and the walls down to the tops of the cases, were frescoed, and the woodwork of the room and the cases was painted. The color of the cases matched that of the doors and windows. When they were removed, the expense of repairing and finishing the part of the room where they had stood, in order to make it correspond with the rest of it, was about $200, and the difference in the rental value of the room with and without the cases was about $700 per year. The court said, at page 63: "It is evident from the description of these cases, and from the manner in which they were placed in the room, taken in connection with the obvious purpose for which they were to be used, that they formed no part of the realty, but were mere chattels or articles of furniture belonging to the tenant." See, also, Ward v. Earl, 86 Ill. App. 635, 640; Ewell, Fixtures (2d ed.) 142, 143.

Order reversed.