# HOLY GHOST CATHOLIC CHURCH OF TWO HARBORS v. J. B. CLINTON AND OTHERS.[1]

December 3, 1926.

No. 25,569.

**Whether tenant's false floor was a removable trade fixture was question for jury.**

Whether a sloping, false floor, installed by a tenant, could be removed with but little or no injury to the building, and whether it was a trade fixture and as such removable by the tenant at the end of his term, were under the circumstances discussed in the opinion questions for the jury.

Fixtures, 26 C. J. p. 664 n. 4; p. 699 n. 60; p. 702 n. 95.

---

See 11 R. C. L. 1092; 2 R. C. L. Supp. 1360; 6 R. C. L. Supp. 689. See 11 R. C. L. 1058; 2 R. C. L. Supp. 1354; 4 R. C. L. Supp. 729.

[1]Reported in 211 N. W. 13.

Action in the district court for St. Louis county tried before Grannis, J., who directed a verdict in favor of defendants Clinton and Meyers. Plaintiff appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*Courtney & Courtney*, for appellant.

*Warner E. Whipple, George W. Atmore, Jr.,* and *Sylvester P. Meyers,* for respondents.

QUINN, J.

The plaintiff was the owner of the premises in question which it had used as a house of worship but subsequent to the year 1919, as a place for entertainment, including picture shows. On June 19, 1923, it leased the same to the defendants Clinton and Meyers for the term of one year commencing August 15, 1923, at a rental of $600 per year payable monthly, with an option in the lessee to renew the lease for another year at the rate of $60 per month, the same to be used as an assembly hall and theater and for no other purpose. The lease contained the following provisions:

"It is further agreed that the Lessees shall have the right to possession of the premises immediately for the purpose of making improvements and repairs and for no other purpose."

"That the lessee will keep all and singular the said premises in such repair, order and condition as the same are in at the commencement of said term, or may be put in during the continuance thereof, damage by fire or otherwise unavoidable casualty only excepted."

"That the lessee will at the termination of said term by lapse of time, or otherwise, remove the lessee's goods and effects and those of all persons claiming under the lessee, and will peacefully yield up to the lessor the said premises, and all erections and additions, made to or upon the same, in good repair, order and condition in all respects, damage by fire or other unavoidable casualty and reasonable use and wear only excepted."

At the time of the execution of the first lease, the lessees went into possession of the premises for the sole purpose of making improvements and repairs thereto at their own expense and with the consent of the landlord, including the sloping floor in the auditorium which was constructed prior to August 15, 1923, for use by them in the moving picture business.

The building is 34 by 90 feet, with a flat floor and a platform in the rear end about 2 feet high. The chairs in the auditorium were fastened to the floor by means of screws. There was a balcony above the front entrance which extended some distance over the auditorium. In repairing the auditorium, the chairs were removed and a sloping floor was constructed the entire width of the building and extending from the front entrance back toward the stage for a distance of 32 feet. At the front entrance this floor was placed 30 inches above the old floor, sloping gradually toward the stage. It was supported by 2 x 4 stringers extending across the auditorium and toe-nailed to the walls of the building with eight-penny nails. These stringers rested upon perpendicular pieces of 2 x 4 which were toe-nailed to the lower floor. The flooring was of 1 x 6 matched lumber, laid lengthwise of the building and nailed securely to the 2 x 4 stringers. The chairs were then put in place and fastened to the floor by means of screws, openings were made to receive the hot and cold air pipes from the basement. At the same time a screen, about 8 feet in width, was installed at the entrance to prevent cold from rushing in upon the audience. This screen was of matched ceiling and extended from the floor up to the balcony, and was held in place by means of quarter-round strips.

Subsequent to the execution of the second lease, the stage was raised about 2 feet by means of a floor similar in construction to the sloping floor.

The tenants operated moving pictures in the building under the terms of the first lease until in September, 1924, when a second lease was executed for the rental of the premises for one year from August 15, 1924, which was in the form of the prior lease except as to the provisions permitting the tenants to take possession for the

purpose of repairs and the amount of rent. On Saturday night, July 5, 1925, the tenants removed the sloping floor, the screen and the floor placed over the stage, replaced the chairs on the old floor and vacated the premises. In removing the floors, a crowbar was used and the floor considerably split and broken, rendering it unfit for further practical use.

Plaintiff seeks to recover damages for injury to the freehold occasioned by the removal of such floors and screen. At the close of the testimony the trial court directed a verdict in favor of the defendants upon the theory that the floors and screen constituted trade fixtures and that the tenants had a right to remove the same. From an order denying its motion for judgment or for a new trial, plaintiff appealed.

The assignments of error challenge the rulings upon the admissibility of evidence and in directing a verdict in favor of the defendants. It is insisted that the property removed became and was, at the time of the removal, a part of the leasehold and, if not, then the question of the intent of the parties was one of fact for the jury to determine from all the facts and circumstances, and that in any event plaintiff was entitled to damages on account of other personal property removed and for unnecessary damage done to the walls, floor and heating plant; while it is insisted on behalf of the defendants that the floors and screen, having been placed in the building by them as tenants under license from their landlord, and being capable of removal without material injury to the building, constitute what are known as trade fixtures and might be removed by them at any time.

It is uncontroverted that the tenants were admitted into possession immediately upon signing the lease on June 19, 1923, for the purpose of making improvements and repairs, none of which were specified in the lease. The stringers extended entirely across the auditorium and the ends were nailed to the walls of the building and also to the upright pieces of 2 x 4 which were toe-nailed to the old floor; then the flooring was laid lengthwise of the building and nailed to the stringers which held the floor securely in place without further fastenings.

The lease provides that the tenants will, at the end of the term, remove their goods and effects and "yield up to the lessor the said premises and all *erections and additions* made to or on the same." The covenant is to yield up *all* erections and additions made to or on the premises. These words are comprehensive and may not be confined to additions such as the law regards as part of the realty. To become an addition, as that term is used in the lease, the intent of the parties is important in determining whether the improvement was to remain as a part of the realty at the termination of the lease. As in the case of fixtures, it is from the particular facts and circumstances in each case that the intention of the parties must be ascertained in the absence of an agreement to the contrary. 36 C. J. 178, and cases there cited; Ward v. Earl, 86 Ill. App. 635; Allen v. Mooney, 130 Mass. 155-157; Taylor v. Collins, 51 Wis. 123, 129, 8 N. W. 22; Hill v. Sewald, 53 Pa. St. 271, 91 Am. Dec. 209; Ottumwa W. M. Co. v. Hawley, 44 Iowa, 57, 24 Am. Rep. 719. The words used are more comprehensive than fixtures and may include additions which the law may not regard as part of the realty. French v. Mayor of New York, 29 Barb. 363, 16 How. Pr. 220; Parker v. Wulstein, 48 N. J. Eq. 94, 21 Atl. 623; Realty Dock & Imp. Corp. v. Anderson, 174 Cal. 672, 164 Pac. 4; see note 42 L. R. A. (N. S.) 546.

The controlling question in the present case is not what are trade fixtures, which the tenants may or may not remove at the end of the term, but rather what did they covenant with the lessor to leave upon the demised premises at the end of the term. Other improvements were made to the premises at the same time, such as the repair of the basement and the erection of a chimney. The landlord consented to all such improvements. In the absence of an express agreement to the contrary, the intention of the parties as to the nature of the additions must be ascertained from the particular circumstances of the case. There is a distinction between additions which may be detached and removed to another location and used, as compared with those which are destroyed and rendered useless by detaching. While such facts are not conclusive proof of the char-

acter of the addition, yet they are relevant to show the intention of the parties. 2 Underhill, Landld. & T. § 743.  11 R. C. L. 1071; Hook v. Bolton, 199 Mass. 244, 85 N. E. 175, 127 Am. St. 487, 17 L. R. A. (N. S.) 699.

The opinion in Shapira v. Barney, 30 Minn. 59, 14 N. W. 270, is not in point. In that case the tenant executed an assignment for the benefit of creditors of all his property to the plaintiff, including the lease and the platform in controversy. The plaintiff then, with the consent of the defendant landlord, assigned the lease to Walsh, reserving the platform under an understanding with the landlord and Walsh that he might remove the same at any time, and the court there held that such facts were sufficient to justify a finding that, in the absence of any express agreement to the contrary, the platform did not become a part of the realty.

In Stout v. Stoppel, 30 Minn. 56, 14 N. W. 268, cited by the respondent, the plaintiff sought to recover for the conversion of certain shelving and counters put into a drug store. The owner of the building insisted that the property was a fixture, became a part of the realty, and that the relation of landlord and tenant existed between the parties. Upon appeal, this court, Mitchell (Justice), disposed of the matter by saying that plaintiff "assumes that the property was a fixture, and became a part of the realty, and that the relation of landlord and tenant existed between the parties. These were the precise questions in issue under the pleadings and in dispute under the evidence, and which were submitted, under proper instructions, to the jury."

The lines between personal property and fixtures are so close and so nicely drawn that no precise and fixed rule can be laid down to control all cases. It is difficult, if not impossible, to give a definition of the term "fixtures" which may be regarded of universal application. Each case must be more or less dependent upon its own peculiar facts. Wolford v. Baxter, 33 Minn. 12, 21 N. W. 744, 53 Am. Rep. 1; White Enamel Ref. Co. v. Kruse, 121 Minn. 479, 140 N. W. 114. The authorities are pretty well agreed that *fixtures*, as distinguished from movable trade fixtures, mean chattels annexed

to the realty so as to become a part of it.   White Enamel Ref. Co. v. Kruse, supra.

To constitute a fixture, the thing must be of an accessory character and must be in some way in actual or constructive union with the realty and not merely brought upon it.   That the thing is removable with but little injury to the building is a factor to be considered, so also that it was installed by a tenant; that it is not removable without being taken to pieces and is practically worthless when removed, are circumstances to be considered in determining the intent of the parties and the character of the addition.   Elwell, Fixtures (2d ed.) p. 151; Matter of City of New York, 192 N. Y. 295, 84 N. E. 1105, 18 L. R. A. (N. S.) 423, 127 Am. St. 903.   These elements may be considered together in determining whether the floor constituted, within the meaning of the contract, additions such as the tenants covenanted to leave upon the premises.   The question was one for the jury under proper instructions.   11 R. C. L. 1092, par. 33, and cases cited in notes 11 and 14.

It may be said that the screen at the entrance was not so attached to the realty as to become a part thereof or constitute an addition thereto.   It could be removed by slipping the same out of the groove made by the pieces of quarter-round.

Reversed.


WILSON, C. J. (dissenting.)
I do not agree that there was a question for the jury.


HOLT, J. (dissenting.)
Both parties moved for a directed verdict.   There was no express agreement in respect to the superimposed inclined floor and stage which defendants placed in the building in order to conduct the business for which the building was leased.   In that situation I am inclined to the opinion that it was for the court and not the jury to determine whether under the written lease the floor and stage thus placed were removable trade fixtures.