**STATE of Minnesota, Respondent,**

**v.**

**Brandon Ray LARSEN, Appellant.**

**A16-1365**

Court of Appeals of Minnesota.

Filed August 21, 2017

Lori Swanson, Attorney General, St. Paul, Minnesota; and Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant County Attorney, St. Cloud, Minnesota (for respondent).

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant).

Considered and decided by Jesson, Presiding Judge; Rodenberg, Judge; and Bratvold, Judge.

## OPINION

JESSON, Judge

The driver of a white Pontiac Grand Am struck a home and crashed into an unoccupied car before fleeing on foot. Appellant Brandon Ray Larsen was arrested a few blocks from the hit-and-run collisions. After a jury trial, he was convicted of driving while impaired, failing to notify the owner of the collision with the unattended car, as well as failing to notify the owner of the damaged house. Larsen appeals his convictions and sentence. He argues, in part, that the duty to stop and notify a property owner of damage applies only to "fixtures" under Minnesota Statutes section 169.09, subdivision 5 (2014). Because a house is not a fixture as a matter of law, we reverse in part and remand to vacate his adjudicated conviction under this statute. But because Larsen's other claims on appeal fail, we affirm in part.

## FACTS

In December 2015, the driver of a Pontiac hit the side of a home and an unattended car in St. Cloud before fleeing the scene. Shortly thereafter, local police arrested Larsen, who was jogging about two blocks from the accident. Larsen had an alcohol concentration of 0.253. In a *Mirandized* statement to police, Larsen admitted to drinking and to driving the Pontiac that evening. But he denied any involvement in the hit-and-run collisions.

Larsen was charged with two counts of felony driving while impaired,[1] failing to notify the owner of property damage to an unattended vehicle, and failing to notify the owner of property damage to a fixture. *See* Minn. Stat. §§ 169A.20, subd. 1(1), (5) (2014), 169.09, subds. 4, 5, 14(c), (e) (2014).

---

1. Larsen stipulated that he had a previous felony conviction of driving while under the influence, which enhanced his charges of

At trial, two witnesses testified that the driver of the Pontiac met Larsen's description, although they described the color of the driver's sweatshirt differently. Larsen's friend, C.H., testified that he was in fact the driver, not Larsen. After the two-day jury trial, Larsen was found guilty of all charges. The district court sentenced Larsen to 78 months' imprisonment and five years of conditional release on one conviction of driving while impaired. The district court also sentenced Larsen to 90 days in jail for his conviction of failing to notify the owner of property damage to an unattended vehicle. Two counts (including the failure to notify the home owner of damage) were left unsentenced. Larsen appeals.

## ISSUES

I. Does a house constitute a fixture under Minnesota Statutes section 169.09, subdivision 5?

II. Did the state present sufficient evidence that Larsen was the driver of the Pontiac to sustain his convictions?

III. Did the district court plainly err when it failed to instruct the jury on witness identification?

IV. Do Larsen's pro se claims of ineffective assistance of counsel have merit?

## ANALYSIS

I. A house does not constitute a "fixture legally upon or adjacent to a highway" as a matter of law under Minnesota Statutes section 169.09, subdivision 5.

Drivers involved in collisions bear certain responsibilities under Minnesota law.

driving while impaired to felonies. *See* Minn. Stat. § 169A.24, subd. 1(2) (2014).

*See* Minn. Stat. § 169.09 (2014).[2] Whenever involved in a collision, drivers must provide identifying information, such as name, address, date of birth, and the vehicle's license plate number. *Id.*, subd. 3(a). In addition, at the request of any person involved in the collision or the investigating police officer, the driver must give the name and address of the vehicle's insurer and the insurance agent. *Id.*, subd. 3(6).

■ But a driver's duties beyond these notice provisions vary depending upon the type of collision. If bodily injury or death results or an occupied vehicle is struck, the driver must stop and remain at the scene. *Id.*, subds. 1, 2. If an unoccupied vehicle is involved, the driver must locate the owner, report the accident to a police officer, or leave a note with identifying information. *Id.*, subd. 4. Finally:

> If the driver of any vehicle involved in a collision knows or has reason to know the collision resulted only in damage to *fixtures legally upon or adjacent to a highway*, the driver shall take reasonable steps to locate and notify the owner or person in charge of the property of that fact.

*Id.*, subd. 5 (emphasis added). Thus, when a collision results in damage to a fixture, while a driver need not immediately stop, he or she must nonetheless take reasonable steps to locate and notify the property owner. *See id.*; *State v. Al-Naseer*, 734 N.W.2d 679, 687 n.3 (Minn. 2007).

■ To sustain Larsen's conviction of failing to notify a property owner of damage to a fixture, the state was required to show that he was involved in a collision

2. The failure to abide by these duties may result in civil and criminal penalties. Minn. Stat. § 169.09, subd. 14.

with a "fixture[ ] legally upon or adjacent to a highway." *See* Minn. Stat. § 169.09, subd. 5. This leads us to the central question: does a house constitute a fixture?[3]

This issue presents a question of statutory interpretation, which we review de novo. *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015). Our task begins (and may end) with determining if the statute's language is unambiguous based on the plain and ordinary meaning of its words. *State v. Koenig*, 666 N.W.2d 366, 372 (Minn. 2003). When making that assessment we may ascertain the ordinary usage of words with the aid of dictionary definitions. *State v. Haywood*, 886 N.W.2d 485, 490 (Minn. 2016). And we may consider the usage of the term at the time the statute was enacted. *See Utah v. Evans*, 536 U.S. 452, 475, 122 S.Ct. 2191, 2205, 153 L.Ed.2d 453 (2002) (courts may ascertain the common usage of terms by referring to dictionary definitions in effect at the time of statutory enactment). If the statute is susceptible to more than one reasonable interpretation, the statute is ambiguous, and we may look beyond the statutory language to discern legislative intent. *Dupey v. State*, 868 N.W.2d 36, 39 (Minn. 2015).

The statute fails to explicitly define a fixture.[4] But it does provide guidance—a fixture must be "upon or adjacent" to the highway. We read this requirement of close proximity to the highway in conjunction with the ordinary usage of the term fixture when the legislature first adopted the phrase in 1937. The origin of the term fixture derives from property law. *Cf. Wolford v. Baxter*, 33 Minn. 12, 17, 21 N.W. 744, 744–45 (1884) (determining whether a fixture was covered under a mortgage in light of property law). It has been defined as "a personal chattel substantially fixed to the land, but which may afterwards be lawfully removed therefrom by the party affixing it, or his representative, without

---

**3.** At the outset, we note that Larsen and the state agree that a house does not constitute a fixture legally upon or adjacent to a highway. Nonetheless, appellate courts have an obligation to review and decide cases "in accordance with law." *State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990). We further recognize that the practice of our court has been to decline review of sufficiency challenges on convictions when final judgment has not yet occurred, as is the case here. *See State v. Hoelzel*, 639 N.W.2d 605, 609 (Minn. 2002) (stating that the district court's finding of guilt was not appealable in absence of official judgment of conviction or conviction ordered entered by the court); *see also State v. Ashland*, 287 N.W.2d 649, 650 (Minn. 1979) (declining to address sufficiency challenge for guilty verdict when defendant was not formally adjudicated guilty and not sentenced). But this case is distinguishable because Larsen's conviction of failing to notify an owner of damage to a fixture was formally adjudicated. *See State v. Pflepsen*, 590 N.W.2d 759, 767 (Minn. 1999).

**4.** The reference to "fixture" has remained unchanged and undefined in the statute since its first adoption in 1937. *Compare* 1937 Minn. Laws ch. 464, art. IV, §§ 18-22, at 741-42, *with* Minn. Stat. § 169.09, subd. 5, *and* Minn. Stat. § 169.011 (2014) (defining other terms). In 1927, as the state adopted traffic laws to adjust to the newly introduced automobile, Minnesota law required the driver involved in a collision resulting in death, injury, or "damage to property" to stop and provide identifying information. Mason's Minn. Stat. § 2720-29 (1927). But in 1937, the legislature moved from the broad category of "death, injury, or damage to property," to create four categories that have since remained in the statute. 1937 Minn. Laws ch. 464, art. IV, §§ 18-22, at 741-42; *see also* Mason's Minn. Stat. § 2720-168, -172 (1940). In doing so, the legislature required that the driver provide identifying information in collisions resulting "only in damage to fixtures legally upon or adjacent to a highway," which is narrower than the broad "damage to property." Since then, the statute has referred only to fixtures, not to property generally. *Cf.* Minn. Stat. § 645.49 (2014) (stating that headnotes are mere catchwords).

the consent of the owner of the freehold." *Black's Law Dictionary* 788 (3d ed. 1933). It also has the meaning of "anything of an accessory character annexed to houses and lands, so as to legally constitute a part thereof." *Webster's New International Dictionary* 958 (2d ed. 1947). Using these definitions, we conclude that the phrase "fixture legally upon or adjacent to a highway" under section 169.09, subdivision 5, plainly means personal property that is substantially and legally affixed on or very near a highway, subject to removal by the property owner.

■ In light of our interpretation of the statute, personal property such as a mailbox, highway sign, or light pole qualifies as a fixture. But a house does not constitute a fixture. Personal property has been defined as "everything that is the subject of ownership, not coming under the denomination of real estate." *Black's Law Dictionary* 1447 (3d ed. 1933). And real property has the meaning of "land, and generally whatever is erected or growing upon or affixed to land." *Id.* at 1448. As a result, while "real property" may include fixtures, real property does not constitute a fixture. Accordingly, while the term "fixture" has and may continue to cause confusion,[5] we conclude that the term fixture as it relates to this statute plainly does not include a house.

Our conclusion is consistent with the legislature's use of the term in other contexts. Minnesota laws differentiate between real property and fixtures, and between fixtures and buildings. In the property-tax statutes, for example, the legislature defined "real property" to include "buildings, structures, and improvements, or other fixtures on it." Minn. Stat. § 272.03, subd. 1 (2014). In other chapters of Minnesota Statutes, the legislature has defined the term fixture to mean "*goods* that have become so related to particular real property that an interest in them arises under real property law." Minn. Stat. § 336.9-102(a)(41) (2014) (emphasis added); *see also* Minn. Stat. § 336.2A-309(1)(a) (2014) (stating a similar definition). In light of this legislative backdrop, we conclude that the legislature knew how to differentiate between the term fixtures as opposed to building, real property, or property, and chose to use the narrower term.[6]

We find further support in judicial opinions discussing the nature of fixtures. In *Hanson v. Vose*, the supreme court explained that a fixture becomes real property if it cannot be removed without leaving the property "in a substantially worse condition than before." 144 Minn. 264, 267, 175 N.W. 113, 114 (1919). Similarly, the supreme court opined that fixtures are generally "removable with but little injury to the building." *Holy Ghost Catholic Church v. Clinton*, 169 Minn. 253, 259, 211 N.W. 13, 15-16 (1926). These opinions reinforce

---

5. Over a century ago, the Minnesota Supreme Court recognized that it "is difficult, if not impossible, to give a definition of the term [fixture] which may be regarded of universal application." *Wolford*, 33 Minn. at 17, 21 N.W. at 744. As such, some commentators have explained that "[t]o attempt to discover an all-inclusive definition for a 'fixture' or posit tests for fixtures in all circumstances is not a profitable undertaking." Ray A. Brown, *The Law of Personal Property* § 16.1, at 515 (3d ed. 1975).

6. We further note, as the state suggests, that section 2720-172 appears to be modeled after the Uniform Vehicle Code. *Compare* Mason's Minn. Stat. § 2720-172, *with* Unif. Vehicle Code § 39 (1939). And while this section of the Uniform Vehicle Code was subsequently broadened to include "fixtures and other property," Unif. Vehicle Code § 43 (1948), the Minnesota legislature did not likewise amend the statute at issue here to include "other property."

our conclusion that, under this statute, a fixture refers to personal property—not real property—that is substantially and legally affixed on or very near a highway. Because a house does not constitute a "fixture" under section 169.09, subdivision 5, we reverse and remand so that the district court may vacate Larsen's adjudicated conviction of failing to notify a property owner of damage to a fixture.[7]

## II. There was sufficient evidence that Larsen was driving the Pontiac to sustain his convictions of driving while intoxicated and collision with an unattended vehicle.

Larsen next argues that there was insufficient evidence to prove that he drove the Pontiac on the evening of the hit-and-run accidents. We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476 (Minn. 2004). In doing so, we assume the jury believed the state's evidence and disbelieved any contrary evidence. *State v. Heiges*, 806 N.W.2d 1, 17 (Minn. 2011).

For the jury to conclude that Larsen was guilty of the charged offenses, the state had to prove that Larsen was driving the Pontiac. In a recorded *Mirandized* statement, Larsen admitted to driving the Pontiac that evening. This constituted direct evidence that shows that Larsen was driving the Pontiac. *Cf. State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (defining direct evidence as evidence that "proves a fact without inference or presumption").

Larsen admitted that he "had a couple too many drinks in order to drive and I drove." As he learned the extent of the damage caused by the hit-and-run accidents, Larsen said "I didn't hit nobody. I don't recall hitting nobody." Moreover, one witness testified that Larsen was the driver of the Pontiac, and another witness testified that the driver met Larsen's description. Given the state's evidence, we conclude that there was sufficient evidence for the jury to conclude that Larsen was the driver of the Pontiac.

Larsen asserts, however, that the state failed to present physical evidence tending to establish that Larsen drove the Pontiac and that the state's witnesses were not credible because they gave conflicting accounts about the color of the driver's sweatshirt. We disagree. While the witnesses gave different testimony about the color of the driver's sweatshirt, their overall testimony was consistent because they both described the driver as a rather tall, white male in his 20s with dark pants. *Heiges*, 806 N.W.2d at 17 (stating that we assume that the jury reconciled conflicting testimony in favor of the verdict). In light of the state's evidence, with due regard for the presumption of innocence and the burden of proof beyond a reasonable doubt, we conclude that there was sufficient evidence for the jury to reasonably conclude that Larsen was guilty of the charged offenses.

## III. The district court did not commit plain error when it did not give a jury instruction on eyewitness identification.

Larsen contends that the district court plainly erred by failing to in-

---

7. Larsen also contends that the district court abused its discretion by permitting the state to reopen its case-in-chief to prove that Larsen failed to notify a property owner of damage to a fixture. Because we reverse and remand on this conviction on separate grounds, it is unnecessary for this court to address this argument.

struct the jury on eyewitness identification testimony. *See* 10 *Minnesota Practice*, CRIMJIG 3.19 (2015) (instructing the jury to consider various factors in assessing identification testimony, such as the length of time the person was in view, the circumstances of that view, and the ability of the witness to see the person). While Larsen neither requested the CRIMJIG 3.19 instruction nor objected to the final jury instructions, this court may review unobjected-to claims of erroneous jury instructions for plain error. *State v. Crowsbreast*, 629 N.W.2d 433, 437 (Minn. 2001). Under that analysis, the defendant must show "(1) error; (2) that was plain; and (3) that affected substantial rights." *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002). To satisfy the third prong, the defendant must show that there was a reasonable likelihood that the error had a significant effect on the verdict. *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998).

▮ Assuming without deciding that the district court erred by failing to include instructions on identification testimony, we conclude that the alleged error was not prejudicial and did not have a significant effect on the verdict for three reasons.

First, the testimony and arguments at trial effectively highlighted the issue of witness identification. During cross-examination, defense counsel asked the witnesses about their opportunity to see the driver, the length of time for observation, the distance from the driver, and the lighting conditions. For example, defense counsel asked one witness how dark the street was and how close the witness was to the driver. And in closing and opening statements, Larsen's counsel addressed concerns about the credibility of the witnesses.

Second, although the district court did not instruct the jury on witness-identifica-tion testimony, *see* 10 *Minnesota Practice*, CRIMJIG 3.19, it did instruct the jury to carefully review eyewitness testimony in consideration of various factors. *See* 10 *Minnesota Practice*, CRIMJIG 3.12 (2015) (instructing the jury that it is the sole judge of whether a witness was believable, based on the witness's "opportunity to know, remember, and relate the facts, ... [their] frankness and sincerity, ... [the] reasonableness or unreasonableness of their testimony, ... and any other factor that bear on believability and weight"); *see also State v. Bishop*, 289 Minn. 188, 195, 183 N.W.2d 536, 540-41 (1971) (explaining that the court's general instructions, which referenced weight and credibility of witness testimony, adequately covered the substance of the identification instruction that was requested). We presume that jurors follow the district court's instructions. *State v. Miller*, 573 N.W.2d 661, 675 (Minn. 1998).

Finally, the state presented other persuasive evidence to show that Larsen drove the Pontiac on the evening of the accidents; most notably, the state presented Larsen's statement, in which he admitted to driving the car. Because Larsen is unable to demonstrate that there was a reasonable likelihood that the alleged error had a significant effect on the verdict, we conclude that the district court did not commit plain error that affected Larsen's substantial rights.

## IV. Larsen's claims of ineffective assistance of trial counsel are without merit.

▮ In his pro se brief, Larsen argues that he was denied effective assistance of trial counsel. We review claims of ineffective assistance of trial counsel de novo because they involve mixed questions of fact and law. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003). To succeed on such

a claim, the facts must show that counsel's representation (1) fell below an objective standard of reasonableness; and (2) a reasonable probability exists that the outcome would have been different absent counsel's errors. *Hawes v. State*, 826 N.W.2d 775, 782-83 (Minn. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)). In evaluating claims of ineffective assistance of trial counsel, we note that "there is a strong presumption that counsel's performance was reasonable." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013). And we will not review a claim based on counsel's trial strategy. *State v. Bobo*, 770 N.W.2d 129, 138 (Minn. 2009).

■ Larsen's claims relate to counsel's alleged failures to object, to ask specific questions, and to present certain evidence. Because Larsen's claims relate to trial strategy, we will not review his arguments. *See Andersen*, 830 N.W.2d at 10. Moreover, beyond his mere assertions that the outcome would have been different, Larsen has failed to show that he was prejudiced by counsel's allegedly inadequate representation. *Rhodes*, 657 N.W.2d at 842 (stating that consideration of both elements of claims of ineffective assistance of counsel is not required if one element is determinative). Therefore, we conclude that Larsen was not denied effective assistance of trial counsel.

## DECISION

Under Minnesota Statutes section 169.09, subdivision 5, a house does not constitute a fixture. As a result, Larsen's conviction under that statute should be vacated on remand. Nonetheless, there was sufficient evidence to affirm Larsen's remaining convictions. Furthermore, the district court did not plainly err by failing to give a jury instruction on witness-identi-

fication testimony. Finally, Larsen was not denied effective assistance of trial counsel.

**Affirmed in part, reversed in part, and remanded.**