## ABEX CORPORATION v. COMMISSIONER OF TAXATION.

207 N. W. 2d 37.

March 23, 1973—No. 42835.

*Warren Spannaus,* Attorney General, and *John R. Kenefick,* Deputy Attorney General, for relator.

*Dorsey, Marquart, Windhorst, West & Halladay, John W. Windhorst,* and *John W. Windhorst, Jr.,* for respondent.

*Keith M. Brownell,* County Attorney, and *Curtis H. Foster,* Assistant County Attorney, for County of St. Louis, amicus curiae.

*William B. Randall,* Ramsey County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for Minnesota County Attorneys Association, amicus curiae.

*George M. Scott,* Hennepin County Attorney, and *David E. Mikkelson,* Assistant County Attorney, for Minnesota Urban County Attorneys Board, amicus curiae.

*Felhaber, Larson, Fenlon & Vogt* and *Edward J. Bohrer,* for The Printing Industry of the Twin Cities, Incorporated, amicus curiae.

Heard before Knutson, C. J., and Otis, Rogosheske, Peterson, Kelly, MacLaughlin, and Murphy, JJ.

MACLAUGHLIN, JUSTICE.

The opinion filed on June 16, 1972, in this case is withdrawn and the following opinion is substituted in its place.

On petition of the commissioner of taxation, we issued a writ of certiorari to the Tax Court. The commissioner seeks review of a Tax Court decision determining that certain machinery qualifies for exemption from taxation pursuant to Minn. St. 1969, § 272.02(11)(b). We reverse.

On January 2, 1967, the county assessor of Lake County determined that for tax purposes the market value of certain property of respondent, Abex Corporation, in that county was $1,990,406, and that the assessed value was $210,097. Included in that determination was the machinery which is disputed in this case. In appropriate and timely proceedings, Abex contended before the commissioner of taxation that the assessed value should be substantially decreased because the machinery was personal property and, therefore, exempt under § 272.02(11)(b). The classification and assessment of the county assessor were approved by the commissioner. On appeal, the Tax Court reversed the order of the commissioner and held that the machinery was personal property and eligible for the exemption.

The question to be decided is whether certain machinery (hereafter disputed property), owned and used by Abex in its plant in Two Harbors, Minnesota, is real or personal property for purposes of the exemption found in § 272.02(11)(b). The exemption statute, § 272.02, provided, in part, as follows:[1]

"All property described in this section to the extent herein limited shall be exempt from taxation:

\* \* \* \* \*

(11) The taxpayer shall elect whether to be exempted with respect to category (a) or (b) as hereinafter defined.

---

[1] The exemption statute was amended by Ex. Sess. L. 1971, c. 31, art. XXII, § 3. Minn. St. 272.02, subd. 1(11), now provides: "The taxpayer shall be exempted with respect to, all agricultural products, inventories, stocks of merchandise of all sorts, all materials, parts and supplies, furniture and equipment, manufacturers material, manufactured articles including the inventories of manufacturers, wholesalers, retailers and contractors; and the furnishings of a room or apartment in a hotel, rooming house, tourist court, motel or trailer camp, tools and machinery which by law are considered as personal property, except personal property which is part of an electric generating, transmission, or distribution system or a pipeline system transporting or distributing water, gas, or petroleum products."

(a)   All inventories, stocks of merchandise of all sorts, manufacturers material, manufactured articles including the inventories of manufacturers, wholesalers, retailers and contractors; * * *

(b)   Tools and machinery *which by law is considered as personal property* used or useable in construction of buildings or highways or in the manufacture, processing, production, sale or distribution of marketable products * * *." (Italics supplied.)

Abex elected to exempt its "[t]ools and machinery which by law is considered as personal property."

Minn. St. 1969, § 272.03, defined real and personal property as follows:

"Subdivision 1.   For the purposes of taxation, 'real property' includes the land itself and all buildings, structures, and improvements or other *fixtures* on it, and all rights and privileges belonging or appertaining to it, and all mines, minerals, quarries, fossils, and trees on or under it.

"Subd. 2.   For the purposes of taxation, 'personal property' includes:

(1)   All goods, chattels, money and effects." (Italics supplied.)

It should be noted that the definition of real property includes the term "fixtures" while there is no reference to fixtures in the definition of personal property. In a divided opinion the Tax Court held that the disputed property is personal property.

Abex Corporation owns and operates a foundry in Two Harbors, and the disputed property is used in that operation. The company produces wear-resistant components for taconite operations located on the Iron Range. Abex purchased the land and building for approximately $225,000 from the Duluth, Mesabi, and Iron Range Railroad. The building is generally one story, but the roof arches to a height of four stories at the center. The dimensions of the building are 275 feet by 300 feet, and it is

about 80,000 square feet in area. Subsequent to the acquisition of the building, Abex spent about $242,000 in modification of the building, consisting mainly of additional service equipment such as water lines used for production, sanitary, and fire protection purposes; a gas line used in connection with the treating furnaces; and certain electrical power equipment.

A large amount of machinery usable in the operation of a foundry was acquired by Abex for use in the building. In one corner of the building it was necessary to go through the roof to accommodate some of the larger pieces of machinery. That particular corner of the building is approximately seven stories high because of the structural change.

A brief description of some of the largest items of the disputed property is helpful in analyzing and deciding the issues in this case.

a. There is a bond system which consists of three storage tanks with a pneumatic transport system for unloading and storing rail-car quantities of additives used in moldings. Each storage tank weighs 20,000 pounds and is bolted to the realty.

b. There are two shakeout systems with certain related equipment. A shakeout is a vibrating deck upon which the poured molds with the castings are placed. A conveyor system is located below the shakeout, and a dust collector is necessary to pull the smoke and dust created by the vibration outside the plant. Both systems and all related equipment in dispute weigh 113,000 pounds, and all items are bolted either to the realty or to the supports.

c. There is a so-called "Eddystone Sand System" consisting of a batch sand preparation system, including an elevator, overhead storage bins, weigh hoppers, sand mullers, sand mixers, and a discharge conveyor. The system is 50 feet in height and rises above the roof of the plant. Structural steel was erected to form a cupola over the building to house the top of the system. The entire system weighs 633,970 pounds and is bolted to the realty.

d. There are two electric furnaces and transformers. These are 3-phase electric-arc furnaces, each with its own transformer. The 8-foot furnace weighs 20,000 pounds, and the 9-foot furnace weighs 30,000 pounds. Each transformer weighs 60,000 pounds. The furnaces are bolted to the realty and the transformers are freestanding.

e. There are three heat-treat furnaces. They are gas-fired, car-bottom furnaces used to anneal and stress-relieve the castings. Each furnace weighs 40,000 pounds and is bolted to the floor.

f. There is a press used to straighten castings or correct distortion due to heat treatment or to mismolding during the operation. The press weighs 70,000 pounds and is bolted to the floor.

g. There is a vertical boring mill used on machine castings. It weighs 40,000 pounds and is bolted to the floor.

The disputed property in the case apparently has a total market value of approximately $1,295,420.

Because of the Tax Reform and Relief Act of 1967, Ex. Sess. L. 1967, c. 32, the commissioner of taxation, local tax assessors, and those in their employ have been required to draw distinctions between personal property and real property. Prior to the passage of that act the distinction was not important, except as it affected the legal remedy available for collecting delinquent taxes, because all "machinery, whether fixtures or otherwise," was valued, assessed, and taxed at one-third of its full and true value pursuant to Minn. St. 1965, § 273.13, subd. 4. Therefore, prior to the 1967 act, all machinery, whether a fixture or personal property, was valued, assessed, and taxed at one-third of full and true value.

In 1967, § 272.02(11)(b) was enacted. Ex. Sess. L. 1967, c. 32, art. IV, § 2. It exempted either inventories or "[t]ools and machinery which by law is considered as personal property used or useable * * * in the manufacture * * * of marketable

products." It then became necessary for tax assessors to determine whether specific items of tools and machinery were personal property, and therefore exempt, or were fixtures, and therefore not exempt.

The following is a summary of the statutory provisions in effect at the times pertinent to the decision in this case.

a.  Section 272.02(11)(b) exempted, upon election of the taxpayer, tools and machinery which by law were considered as personal property.

b.  Section 272.03, subd. 1, defined real property for purposes of taxation as "the land itself and all buildings, structures, and improvements or other fixtures on it * * *."

c.  Section 272.03, subd. 2(1), defined personal property for purposes of taxation as including "[a]ll goods, chattels, money and effects."

The Tax Court found that the disputed property was exempt under § 272.02(11)(b). That necessarily means that the Tax Court found the property to be "machinery which by law is considered as personal property." Personal property is defined as "goods, chattels, money and effects." Thus, implicit in the Tax Court's opinion is the finding that the disputed property is within the terms "goods, chattels * * * and effects."

■  A statute creating an exemption from taxation must be strictly construed, the presumption is against the exemption, and the burden of proof is on the one seeking the exemption to establish that he is entitled to it.

In Ramaley v. City of St. Paul, 226 Minn. 406, 412, 33 N. W. 2d 19, 23 (1948), we said:

"* * * Exemptions from taxation will not be presumed, but must be established by clear and express language, and all presumptions are against an exemption."

Camping and Education Foundation v. State, 282 Minn. 245, 250, 164 N. W. 2d 369, 372 (1969), stated:

"There are certain general rules which have been long estab-

lished relating to statutes and constitutional provisions providing for exemption from taxes. The basis for all tax exemption is the accomplishment of some public purpose as opposed to favoring of particular persons or corporations at the expense of the taxpayers generally. State v. Board of Foreign Missions of Augustana Synod, 221 Minn. 536, 22 N. W. (2d) 642 [1946]. Accord, State v. Ritschel, 220 Minn. 578, 20 N. W. (2d) 673, 168 A. L. R. 274 [1945] ; State v. Northwestern Preparatory School, 249 Minn. 552, 83 N. W. (2d) 242 [1957] ; State v. Northwestern Vocational Institute, Inc. 232 Minn. 377, 45 N. W. (2d) 653 [1951].

"One of the rules that is well established is that taxation is the rule and exemption is an exception in derogation of equal rights. Therefore, there is a presumption that all property is taxable. In consequence, the burden of proof is on the one seeking the exemption to establish that he is entitled to the exemption. See, In re Junior Achievement of Greater Minneapolis, Inc. 271 Minn. 385, 135 N. W. (2d) 881 [1965] ; Christian Business Men's Committee v. State, 228 Minn. 549, 38 N. W. (2d) 803 [1949] ; American Ry. Exp. Co. v. Holm, 169 Minn. 323, 211 N. W. 467 [1926].

"Another long-established rule is that exemption provisions are to be strictly construed. See, Ramaley v. City of St. Paul, 226 Minn. 406, 33 N. W. (2d) 19 [1948]. See, also, St. Peter's Church v. County of Scott, 12 Minn. 280 (395) [1867] ; County of Hennepin v. Bell, 43 Minn. 344, 45 N. W. 615 [1890] ; County of Ramsey v. Church of the Good Shepherd, 45 Minn. 229, 47 N. W. 783, 11 A. L. R. 175 [1891]."

■ Section 272.02(11)(b) exempts machinery which by law is considered personal property. As we have said, the tax statute's definition of real property includes "fixtures" while its definition of personal property omits "fixtures." Therefore, if the disputed property is included in the category of fixtures, it is not exempt from taxation.

Defining a fixture for purposes of taxation is a matter of first

impression in Minnesota. No cases have been found distinguishing personal and real property for this purpose. Both parties recognize that the question of whether property is personal or has become part of the real estate as a fixture has been decided in many different ways under many different circumstances and that each decision must turn on its own peculiar facts and circumstances, including the purpose for making the distinction. It must be borne closely in mind that the sole purpose in making the distinction herein is to determine whether certain property is exempt from taxation under the applicable statutes and for no other reason.

Because of the uniqueness of the question before us, the previous case law is not necessarily determinative. However, certain cases are helpful and instructive in reaching our decision. The leading Minnesota case on the distinction between personal property and fixtures is Wolford v. Baxter, 33 Minn. 12, 21 N. W. 744 (1884). In that case, the plaintiff, a mortgagee, wished to restrain the defendant from impairing his security by removing from a brewery some large casks, fermenting tubs, and coolers, which defendant claimed were chattels and thus removable. In holding the items to be personal property, this court, speaking through Mr. Justice William Mitchell, stated (33 Minn. 17, 21 N. W. 745):

"* * * [T]o constitute a fixture, the thing must be of an accessory character, and must be in some way in actual or constructive union with the principal subject, and not merely brought upon it; that in determining whether the article is personal property, or has become a part of the realty, there should be considered the fact and character of annexation, the nature of the thing annexed, the adaptability of the thing to the use of the land, the intent of the party in making the annexation, the end sought by annexation, and the relation of the party making it to the freehold. * * * *Ponderous articles, although only annexed to the land by the force of gravitation, if placed there with the*

*manifest intent that they shall permanently remain, may be fixtures.*" (Italics supplied.)

In Pond Machine Tool Co. v. Robinson, 38 Minn. 272, 37 N. W. 99 (1888), the court considered whether an iron planer in a machine shop was subject to a mechanics lien. Our court held that the mechanics lien statute subjected the shop to a lien because the machine was a fixture. The court wrote (38 Minn. 275, 37 N. W. 101):

"The evidence shows that the Pray Company were in need of such a machine for use in the business of their shop. * * * It was accordingly set up in the machine-shop in a place prepared for it, and properly adjusted so as to run and be operated in connection with the other machinery in the shop. It was an enormous planer, of many tons' weight, and needs no supports other than the foundation prepared for it. It is found that in order to set up the machine it was necessary to cut pits in the floor for the gearing. It is not bolted down, but is held in its place by its own weight,—76,000 pounds. The building in which it was placed was specially constructed for a machine-shop, 200 feet long and 50 feet wide, and had a large amount of machinery in it specially for that business. * * * *It was intended for permanent use in the shop in the business of the company, and was accessory to it and a necessary supplement to the other machinery.* * * * The machine was properly designated as a fixture in the shop, such as to subject the latter to a lien * * *." (Italics supplied.)

Shepard v. Blossom, 66 Minn. 421, 69 N. W. 221 (1896), involved the question of whether certain machinery[2] constituted fixtures as between mortgagors and a mortgagee. The court found the machinery to be fixtures and said (66 Minn. 423, 69 N. W. 222):

"It sufficiently appears that the buildings were constructed

---

[2] The machinery included emery grinders, sawing machines, molding machines, planers, jointers, mortising machines, turning lathes, and polishing machines. All were found to be fixtures.

for the special purpose for which they were used, that the machinery was all placed in them for the same purpose, and that the whole forms one entire plant. Then the intention to make the machinery a permanent part of the plant sufficiently appears. But, as held in Farmers' Loan & Trust Co. v. Minneapolis Engine and M. Works, 35 Minn. 543, 29 N. W. 349 [1886], placing the machinery in position in the building with the intention of making it a permanent part of the plant is not sufficient to make such machinery a part of the realty, unless it is actually or constructively attached to the building or land. * * *

* * * * *

"* * * We are of the opinion that the finding that these machines are a part of the realty should be sustained. As said in Wolford v. Baxter, supra, 'Ponderous articles, although only annexed to the land by the force of gravitation, if placed there with manifest intent that they shall permanently remain, may be fixtures.' "

Abex urges that the Shepard and Pond Machine Tool Co. cases involve special-purpose buildings and should be distinguished for that reason. It may be noted parenthetically that the records in those cases disclose that most of the several buildings involved appear to have been suitable for other purposes. Further, the building involved herein could arguably be considered a special-purpose building because of the large amount of money expended to fit it out for the purposes of a foundry. However, those observations are unnecessary because we do not believe the distinction between special- and general-purpose buildings should be controlling in determining whether the Abex machines are fixtures for the purpose of taxation.

The Wolford, Shepard, and Pond Machine Tool Co. cases point to the conclusion that the disputed property is taxable as fixtures. The cases indicate:

(a) To be a fixture, the property must be annexed in either an actual or a constructive manner. An object is constructively annexed where (1) it has been physically annexed but may be

separated for a temporary purpose, e.g., for repair; or (2) although never physically annexed, the object is an essential part of something that is annexed, e.g., keys in a door; or (3) the object is ponderous and annexed to the land only by force of gravitation. In this case there is actual annexation as to some items and constructive annexation as to others, but all items are ponderous, a characteristic which we deem essential to constitute this machinery taxable fixtures under § 272.03, subd. 1.

(b) There must also be an intent to make the property a permanent accession to the freehold. This intent may be evidenced by an expressed declaration or it may be implied. When considering the intent test, we have in mind that this case requires us to classify the machinery as personalty or realty for determining the existence of an exemption from taxation under § 272.02(11)(b). For this purpose, the requisite intent, i.e., intent to make a permanent accession to the freehold, can be more accurately stated as intent to make a *nontemporary* accession. The effect of this is to classify as fixtures those objects which are annexed but which are not obviously temporary accessions nor obviously permanent accessions. Stated in other terms, there are three categories of property for these purposes: (1) Annexed property which is a temporary accession to the freehold; (2) annexed property, such as heating and utility equipment, which is an obviously permanent accession and which serves the freehold rather than the business conducted in it; and (3) annexed property wherein the intent is to make a nontemporary accession to the freehold, e.g., the disputed property involved in this case. Although the fixture cases speak of a "permanent" accession, we believe our requirement of intent to make a "nontemporary" accession is reasonable in this tax exemption case for three reasons: (1) Expediency requires that tax assessors cannot be expected to make daily interpretations in the gray area between "temporary" and "permanent," (2) permanence must be distinguished from perpetuity, and (3) tax exemption statutes must be strictly construed.

Among other things, the fact and character of the annexation and the nature of the annexed property itself should be considered in determining whether there is intent to make a nontemporary accession to the freehold. Thus, the fact that machinery is ponderous, whether or not it is physically affixed to the realty, is an essential element tending to imply an intent to make a nontemporary accession to the freehold. In the instant case, the machines are huge and ponderous, and most are actually attached to the freehold. Another indication of intent to make a nontemporary accession is that, at the time of annexation, the annexed machinery is necessary to the continuing operation of the particular business for which the building is used and has been installed for use in the building for the remaining useful life of the machinery or until, for some unforeseen reason, a change in the use of the building itself occurs. In this case, it appears obvious from observation and other objective evidence that the machines were necessary to the continuing operation of the foundry, were installed for use in the building for their remaining useful life, and were not intended to be taken out and used elsewhere unless by reason of some unexpected change in the use of the building.

The fact that the machinery is ponderous is probably not enough by itself to warrant an implication of the requisite intent. Likewise, the facts that the machinery is necessary to the continuing operation of the particular business for which it is used and has been installed for use in the building for its remaining useful life or until the use of the building unexpectedly changes are alone insufficient to imply intent to make a nontemporary accession. All of these facts taken together, however, clearly imply the requisite intent. The courts and the taxing authorities may reasonably assume that ponderous machinery, which by objective evidence is necessary to the continuing operation of the particular business for which the building is used, and which has been installed for use in the building for its remaining useful life and is not to be removed absent some unforeseen change in the

building's use, has been installed with the intent to make a non-temporary accession to the freehold. The burden of proof is upon the taxpayer to show otherwise.[3] In this case both the factor of annexation and the factor of intent are present to establish a fixture for the purpose of taxation.

■ The Tax Court placed great weight on the doctrine of "trade fixtures." The following is from the memorandum of the Tax Court:

"There is no doubt that, as between landlord and tenant, (unless a contrary intention appeared from the agreement between them) all of the items here in question would be considered trade fixtures and would be removable by the tenant during the continuance of the lease. * * * From this it logically follows that if the appellant had leased the premises and had installed the disputed property on the same premises, they could not have been taxed to the landlord. The taxing authorities would have had to tax them as personal property.

"The legislature could hardly have intended to tax trade fixtures as real property if they were owned by the owner of the fee and not to tax them as such if they were owned by the tenant. This would be entirely illogical and hence we have reached a conclusion that the word 'fixtures' in M.S.A. 272.03 does not include 'trade fixtures'."

This court has stated that the trade-fixtures doctrine applies only in a landlord-tenant relationship. Willcox Boiler Co. v. Messier, 211 Minn. 304, 1 N. W. 2d 130 (1941).[4]

---

[3] For example, if Abex were to install a ponderous machine for a 1-month special run only, intending to remove it after the special run, it would not be a fixture, even though it might be firmly bolted to the floor. Of course, Abex, as taxpayer, would bear the burden of establishing that fact.

[4] Willcox Boiler Co. v. Messier, 211 Minn. 304, 1 N. W. 2d 130 (1941), also makes clear that the dissent's reliance upon White Enamel Refrigerator Co. v. Kruse, 121 Minn. 479, 140 N. W. 114 (1913), is misplaced. The Kruse case is clearly limited to landlord-tenant situations. In Willcox, we stated that, if the refrigerator in the Kruse case had

In Northwestern Lbr. & Wrecking Co. v. Parker, 125 Minn. 107, 111, 145 N. W. 964, 965 (1914), we said:

"When the question arises between landlord and tenant, different considerations enter into the case. Modern decisions have ingrafted on the law of fixtures an exception, due to the growing necessities of trade, that certain articles *ordinarily fixtures,* attached by a tenant for trade purposes, may be removed during the tenancy. Such articles are known as 'trade fixtures.' " (Italics supplied.)

The tax statutes involved draw no distinction between fixtures installed by a landlord, a tenant, or an owner-operator. The statute states that fixtures are real property for purposes of taxation, and there is no differentiation between trade fixtures and other fixtures. An article of property is taxable if it is a fixture as defined in this opinion, even though it may be a "trade fixture" as between the landlord and tenant.

■ Several comments are necessary in response to the dissenting opinion:

(a) Support for exemption is claimed in a recent amendment to the statute defining real property. In 1971, Minn. St. 1969, § 272.03, subd. 1, was amended by Ex. Sess. L. 1971, c. 31, art. XVII, § 1, to read, in part, as follows:

"A building or structure shall include the building or structure itself, together with all improvements or fixtures annexed to the building or structure, which are integrated with and of permanent benefit to the building or structure, regardless of the present use of the building, and which cannot be removed without substantial damage to itself or to the building or structure."

The dissent states that "the legislature amended the statute merely to clarify what they had meant originally rather than to change its former meaning."

---

been installed in the same manner by the owner of the premises instead of by a tenant, it would have been held lienable (and, therefore, a fixture). 211 Minn. 307, 1 N. W. 2d 132.

460

We cannot regard that assertion as other than a mere conclusion which is unsupported by any evidence of legislative intent. Certain trial court decisions are also cited. Those decisions are not helpful in determining legislative intent. It is also impossible to ascertain from any legislative history what was intended by the legislature when this change was made.

It should be noted that the definition of real property was also amended in a previous omnibus tax bill passed by the legislature but vetoed by the governor on August 3, 1971.[5] As indicated in the dissent, the veto had nothing whatsoever to do with the redefinition of real estate but was because the bill, in the opinion of the governor, did not provide sufficient tax relief for individuals and farmers.

The definition of real estate in the vetoed bill contained the following:

"Huge and ponderous machinery or equipment, whether or not located in a structure, shall be considered a fixture to real estate if it is installed or affixed to a structure in such a manner as to create a permanent or semi-permanent installation, or is installed with the intention of remaining on the real estate for the useful life of the machinery or equipment." Journal of the House, Ex. Sess. 1971, p. 427.

Obviously, the definition in the bill passed by the legislature but vetoed by the governor is somewhat similar to the result reached by us in this case. It is interesting to speculate whether, had the vetoed bill been signed by the governor, the dissent would make the same assertion that this definition was intended to clarify rather than to change the meaning of real estate as used in the statute.

It is obvious that the change in the definition statute is not helpful. Moreover, since it is not before us, the change should not be considered by us until it is here in a proper setting for our decision.

[5] Journal of the House, Ex. Sess. 1971, pp. 357, 427, 433, 438, 471.

(b)   Reliance is placed by the dissent on the use of the word "other" before fixtures in the definition of real property. Its use does not support the dissent's conclusion that the term "other fixtures" includes only those fixtures which have the same character of permanence as buildings, structures, and improvements. Brooklyn Edison Co. Inc. v. Davidson, 269 N. Y. 48, 198 N. E. 627 (1935), is cited by the dissent. In that case, the statute authorized an electric corporation "to lay, erect and construct suitable wires or other *conductors,* with the necessary poles, pipes or other *fixtures* in, on, over and under the streets." (Italics in original.) 269 N. Y. 50, 198 N. E. 628. The court held that a transformer was not within "other fixtures" because its primary purpose was not to *conduct* electricity. The statute's use of the word "necessary" makes it clearly distinguishable from the present statute. Also cited is Russell v. Golden Rule Min. Co. 63 Ariz. 11, 159 P. 2d 776 (1945), where a contract involving mining claims provided that "timbering, ladders, pipe lines, gravity water development and buildings, and other permanent improvements" must remain on certain realty. 63 Ariz. 18, 159 P. 2d 779. The court held that certain contested machinery was not within the term "other permanent improvements." The court was aided in its decision by the agreement of the parties in other related contracts which clearly indicated that all machinery could be removed. Therefore, this case is also distinguishable.

In the statute here in question, the meaning of "other" is equivocal. However, limiting "other fixtures" to the meaning of "improvements," as the dissent advocates, would render "other fixtures" meaningless. Therefore, it seems clear that the legislature intended, in its use of the term "fixtures," to include within the definition of real estate something other than "improvements."

(c)   The dissent quotes from Transport Leasing Corp. v. State, 294 Minn. 134, 137, 199 N. W. 2d 817, 819 (1972), as follows:

"Our interpretation of the statute [the exemption statute in-

volved herein] is consistent with the legislative objective. The state concedes that a major objective of the statute was to relieve industry of burdensome personal property taxes as a stimulus to economic activity and employment opportunity."

The question in the Transport Leasing Corporation case was whether certain *uncontestedly personal property* qualified for the tax exemption under § 272.02(11)(b) where the personal property, certain tools and machinery, was owned by the taxpayer but leased to another. The lessee used the personal property for purposes declared exempt by the statute. We had no difficulty in holding that the exemption would apply to leased personal property as well as to personal property owned and used by the taxpayer. There is no question that the legislature intended to exempt personal property from taxation. The question in this case, however, is whether certain property is real property or personal property, not whether personal property is entitled to the exemption. The limitation of the exemption to tools and machinery which are personal property makes it clear that the legislature did not intend to exempt all machinery. If the legislature had intended to exempt property of the type involved here, it would not have limited the exemption to "[t]ools and machinery which by law is considered as personal property" and would not have referred to fixtures in its definition of real property. Under these circumstances, we believe our decision herein is entirely consistent with the Transport Leasing case.

We can find no support in the record for the assertion that this opinion results in minimal tax relief for Abex. In addition to the property conceded by the commissioner to be personal property prior to and on this appeal, it is highly probable that Abex owns machinery which is clearly personal property and which has not been disputed at any time by the commissioner. The legislature exempted only those tools and machinery which by law are considered to be personal property, and it included fixtures within the definition of *taxable* real property. If Abex is left with considerable machinery which is taxable, it is due

to statutory limitations and definitions and not because of this opinion. Furthermore, if certain industries receive greater relief than other industries, that also is a result of the legislative enactments which we are bound to follow. Undoubtedly, inequities will result under any interpretation. It is obviously very difficult for the legislature to enact legislation which affords all industries substantially the same degree of tax relief.

(d) It is argued that since Black, Law Dictionary (4 ed.) p. 605, includes "fixtures" in its definition of "effects," a fixture is personal property for tax purposes. This is a slim reed on which to base such a conclusion for it is more than overcome by the express inclusion of fixtures in the statutory definition of real property. It should be noted that Black's dictionary also includes all "real and personal" property in its definition of effects. The dissent's argument, carried to its logical end, would include all "real and personal" property in the definition of personal property and would thus erase the statutory distinction between real and personal property.

(e) We feel constrained to point out that the statement in the dissent that "[i]t has been the long-continued practice of county assessors to list heavy machinery as personal property" is unsupported by the evidence. The 1964 tax bulletin of the commissioner of taxation, Minn. Property Tax Bull., Vol. 2, No. 2 (Feb. 1964), intended to assist assessors in classifying property and referred to in the dissenting opinion, is probably the best evidence that assessors have been aware for some time of the necessity to classify so-called "attached machinery" separately from personal property. That bulletin states in part as follows:

"One of the most difficult areas of classification is to distinguish between machinery that is an integrated part of a building, machinery that is attached to real estate [6] and that which should

---

[6] The terminology "machinery that is attached to real estate" is used by the commissioner to refer to property which is not an integrated part of the building such as electric utilities but which is also not personal property—in other words, the type of fixtures which are involved in this appeal.

be listed as personal property.

"We have noted that there has been wide diversity in the classification of attached equipment * * *.

"The general rule that should be followed in determining classification is as follows: Any equipment that is an integrated part of a building should be included in the valuation of the building. This should include equipment permanently installed and auxiliary to the purpose of the building, such as escalators, elevators, heating, ventilation and air conditioning plants, sprinkler systems and plumbing and electrical installations.

\* \* \* \* \*

"\* \* \* The general rule to be applied in determining whether equipment is attached machinery is as follows: Although the machinery may be more or less permanently located within the structure, *it is not a part of the structural facilities but constitutes a part of the production, processing or service function which takes place within the building.*

\* \* \* \* \*

"Rules to be followed in classifying equipment as personal property are as follows: [I]t is equipment that is not bolted down or affixed, it is not attached with piping or other connecting apparatus, it can be removed without damage to itself, its removal does not affect the use of installed machines, *it can ordinarily be moved from place to place as it is used.*" (Italics supplied.)

There is no evidence to support the belief that, prior to 1967, machinery of the type contested here was viewed by assessors as personal rather than real property for purposes of taxation. In any event, as previously stated, the distinction between fixtures and personal property was not significant for purposes of valuation, assessment, and taxation (as distinguished from the legal remedies available for the collection of taxes) until the passage of the Tax Reform and Relief Act of 1967, Ex. Sess. L. 1967, c. 32. This was true because tools and machinery, "whether

fixtures or otherwise," were in the same classification for tax purposes. Minn. St. 1965, § 273.13, subd. 4.

It should also be noted that in State v. Clarkson Coal & Dock Co. 188 Minn. 106, 246 N. W. 538 (1933), cited by the dissent, the question of whether the property was personal or real was not in issue. Further, whether the property was personal or real in no way determined the basis upon which proper assessment should be made. In Borgelt v. City of Minneapolis, 271 Minn. 249, 135 N. W. 2d 438 (1965), also cited by the dissent, an asphalt mixing plant was described as personal property. A case involving an asphalt mixing plant, Midwest Asphalt Corp. v. County of Ramsey, Supreme Court File No. 43501, is pending in this court at the present time, so extended comment is inappropriate. However, it is worth noting that the evidence in that pending case shows that asphalt mixing plants, while ponderous, are specifically designed and intended to be moved from place to place as asphalt is needed for various jobs, and that such plants are in fact moved as needed. Clearly, the fact situation presented in that case is entirely different from the one presented here.

(f)  We have considered and declined to follow certain Ohio cases cited by Abex, such as Zangerle v. Standard Oil Co. 144 Ohio St. 506, 60 N. E. 2d 52 (1945). The Zangerle case is quoted by the dissent to support the contention that an article of property is a fixture only when usable by any occupant of the freehold regardless of what business is being conducted on the premises, and that property is not a fixture if it is devoted primarily to the business conducted on the premises.[7] It is worth noting, however, that the Ohio cases do not involve the definition of a fixture for taxation purposes under a specific statute such as

---

[7] On this point there is an apparent inconsistency in the dissenting opinion. For example, the dissent seems to approve the concession by Abex that "the dust control sludge disposal system, the three concrete silos for sand storage, and the quench tank" are fixtures for tax purposes. These items are obviously devoted primarily to the business which is being conducted on the premises and could not be used by any occupant of the freehold.

is involved here. Those cases are also not consistent with other authority. For example, 35 Am. Jur. 2d, Fixtures, § 101, states:

"* * * [M]achinery introduced upon the realty as a permanent accession in order to carry on the business for which the realty is used becomes a fixture and part of the realty upon being installed."

In Wolford v. Baxter, 33 Minn. 12, 17, 21 N. W. 744 (1884), Mr. Justice Mitchell said:

"It has often been remarked that the law of 'fixtures' is one of the most uncertain titles in the entire body of jurisprudence. The lines between personal property and fixtures is often so close and so nicely drawn that no precise and fixed rule can be laid down to control all cases. It is difficult, if not impossible, to give a definition of the term which may be regarded of universal application. Each case must be more or less dependent upon its own peculiar facts."

Both parties have artfully and vigorously argued their respective positions on a novel and difficult question. In arriving at our decision, we are mindful that exemptions from taxation are to be strictly construed, that the burden of proof is upon the one seeking the exemption, and that in ascertaining its intention the legislature has directed us that "[t]he legislature intends to favor the public interest as against any private interest." Minn. St. 645.17(5).

It is our judgment that the legislature intended the disputed property to be fixtures for purposes of taxation. Property which (a) is ponderous and therefore annexed to real estate, whether or not actually attached and (b) has been annexed with the intent to make a nontemporary accession to the freehold, is a fixture within the meaning of Minn. St. 1969, § 272.03, subd. 1. Here, annexation is present because the machinery is ponderous.[8] Intent to make a nontemporary accession can be implied

---

[8] All machinery here in dispute weighs 2,500 pounds or more. For purposes of our holding herein and based upon the record before us,

because the machinery is ponderous, is necessary to the continuing operation of the foundry, and has been installed in the building for the remaining useful life of the machinery or until the use of the building unexpectedly changes. Thus, since the machines are fixtures within the meaning of § 272.03, subd. 1, and are not personal property, they are not exempt from taxation under Minn. St. 1969, § 272.02(11)(b).

The decision of the Tax Court is reversed.

KELLY, JUSTICE (dissenting).

I disagree with the majority's interpretation and application of Minn. St. 1969, § 272.02(11)(b). The construction placed upon the statute frustrates the legislative purpose of granting property tax relief.

1. Central to the majority's conclusion that the disputed property in this case constitutes fixtures within the meaning of the tax laws is the rule of statutory construction that statutes which grant exemptions from taxation should be strictly construed against the taxpayer. This is an exception to the normal rule that tax statutes are to be construed in favor of the taxpayer. See, e. g., Mondale v. Commr. of Taxation, 263 Minn. 121, 116 N. W. 2d 82 (1962).

However, strict construction of tax exemption statutes should not invariably be applied when the reason for invoking the rule is not present. This court has previously recognized that an exemption statute should not be strictly construed if it would frustrate the legislative purpose of the statute. In Sevcik v. Commr.

2,500 pounds appears to be a reasonable lower limit on ponderousness for the disputed foundry machinery here in question. If a more precise definition of "ponderousness" is necessary for other contested machinery, it should be determined in appropriate administrative proceedings by the commissioner. Machines as light as 500 pounds were in dispute before the Tax Court, but they were conceded before this court by the commissioner to be exempt personalty. In no way do we imply that machines weighing less than 2,500 pounds are ponderous.

of Taxation, 257 Minn. 92, 101, 100 N. W. 2d 678, 685 (1959), the court commented:

"The relator relies on the rule which is often stated that statutory provisions exempting property from taxation are to be strictly construed and that deductions are allowable only when plainly authorized. We think *that rule is subject to qualification* here since it is the rule, too well established to be ignored, that the *primary consideration in the statutory construction is the intention of the legislature.*" (Italics supplied.)

A similar observation was made in In re Estate of Raynolds, 219 Minn. 449, 453, 18 N. W. 2d 238, 240 (1945), where, after noting the rule of strict construction, the court stated:

"* * * On the other hand, it is our duty to interpret the statute in the light of its obvious purpose. Mattson v. Flynn, 216 Minn. 354, 13 N. W. (2d) 11 [1944]. The fundamental aim of construction is to ascertain and give effect to the intention of the legislature as expressed in the language used."

Other cases have recognized that, in spite of the rule of strict construction, constitutional provisions exempting property from taxation "are to be given a reasonable, natural, and practical interpretation in light of modern conditions in order to effectuate the purpose for which the exemption is granted." Christian Business Men's Committee v. State, 228 Minn. 549, 559, 38 N. W. 2d 803, 811 (1949). See, also, State v. Board of Foreign Missions of Augustana Synod, 221 Minn. 536, 542, 22 N. W. 2d 642, 645 (1946).[1]

The obvious import of these decisions is that strict construction of exemption statutes must yield to the more important

---

[1] An example of less strict construction of an exemption provision is seen in the case of nonpublic schools where the policy of the state has been to encourage private educational institutions. See, e. g., State v. Northwestern Preparatory School, 249 Minn. 552, 83 N. W. 2d 242 (1957); Graphic Arts Educational Foundation, Inc. v. State, 240 Minn. 143, 59 N. W. 2d 841 (1953).

concern for effectuating the legislative purpose of the statute. This objective of interpretation is also mandated in the rules of construction provided by the legislature. Minn. St. 645.16 reads in part:

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions.

\* \* \* \* \*

"When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

\* \* \* \* \*

(4) The object to be attained;

\* \* \* \* \*

(6) The consequences of a particular interpretation."

In addition, Minn. St. 645.17 provides in part:

"In ascertaining the intention of the legislature the courts may be guided by the following presumptions:

(1) The legislature does not intend a result that is *absurd,* impossible of execution, or *unreasonable;*

(2) The legislature intends the entire statute to be effective and certain;

\* \* \* \* \*

(5) The legislature intends to favor the public interest as against any private interest." (Italics supplied.)

The tax exemption provision of § 272.02(11)(b) which is in dispute in the present case was enacted as a part of the Tax Reform and Relief Act of 1967, Ex. Sess. L. 1967, c. 32. The title to the act reads in part:

*"An act providing relief to real and personal property taxpayers * * *."*

The Tax Court recognized that "the generally accepted intent of the legislature was to relieve manufacturers of the heavy burden of personal property taxes on 'tools and machinery' when the Act was passed." The commissioner does not disagree that the legislative purpose of the statute is to grant personal property tax relief.

In recognizing the purpose of this enactment to grant some property tax relief, this court observed in Transport Leasing Corp. v. State, 294 Minn. 134, 137, 199 N. W. 2d 817, 819 (1972):

"Our interpretation of the statute is consistent with the legislative objective. The state concedes that a *major objective of the statute was to relieve industry of burdensome personal property taxes as a stimulus to economic activity and employment opportunity*." (Italics supplied.)

The court also noted that policy considerations in granting constitutional tax exemptions to encourage public interest organizations—

"* * * are patently distinguishable from the statutory policy of encouraging business expansion by the intentional grant of tax relief upon income-producing personal property used by private industry." 294 Minn. 138, 199 N. W. 2d 820.

Although the issue involved in the Transport Leasing case is different from the present dispute, our recognition of the legislative purpose of the enactment should not be overlooked in now applying a strict rule of construction upon the same provision.

The majority refers to that portion of Minn. St. 645.17(5) which states that "[t]he legislature intends to favor the public interest [taxation] as against any private interest [exemption]." In the present case, however, it is evident that the legislature, in enacting the Tax Reform and Relief Act of 1967, found it to be in the public interest to give this tax relief to encourage business expansion and economic growth by attracting industry to the state through lower property taxation. The consequences of the interpretation of the exemption statute by the majority

are to exclude most machinery of any tax significance from the exemption and, I believe, to frustrate the intention of the legislature.

Because of an apparent and well-publicized legislative purpose of granting tax relief, the rule of strict construction of the statute is misplaced in the present case. Rather, the statute should be interpreted in a fair and reasonable manner to accomplish the legislature's self-announced objective of tax relief.

2. The consequences of the majority's construction of Minn. St. 1969, § 272.02(11), work to destroy the intended tax relief to personal property taxpayers which was apparently contemplated by the legislature. The statute alternatively exempts, at the option of the taxpayer, either inventories and manufacturing materials or "[t]ools and machinery which by law is considered as personal property used or useable * * * in the manufacture * * * of marketable products * * *."

When Abex originally sought the commissioner's review of the county assessor's assessment, prior to the appeal to the Tax Court, the dispute involved property with a market value of $85,230 which had been assessed as "real estate" and property with a market value of $1,320,681 which had been assessed as "attached machinery." The former was determined to be class 4 property and was assessed at 40 percent of its market value, and the latter was determined to be class 3 property and was assessed at 33 1/3 percent of market value.

Before the Tax Court, Abex conceded that certain items with a claimed market value of $37,924, which had been installed in the building after its acquisition, had been correctly assessed as "real estate," and other items with a claimed market value of $26,454 had been correctly assessed as "attached machinery." These items included the dust control sludge disposal system, the three concrete silos for sand storage, and the quench tank. These concessions are consistent with Abex's theory and the theory of this dissent because these were items that could not be removed

without substantial damage to the real estate or to the property itself.[2] All of the other property, the status of which is in question, can be removed without doing substantial damage to itself or the building. However, the removal of the Eddystone Sand System would require the lifting off of a cupola in the roof by a hoist and the replacement of the cupola after the removal. The Tax Court decided that this cupola removal would not do substantial damage to the building. This is a finding of fact, and the evidence was such that the Tax Court might reasonably make that determination. Sevcik v. Commr. of Taxation, *supra*.

Before this court, the commissioner has now conceded that certain items with a claimed market value of $12,929 formerly determined by him to be real estate and items with a claimed market value of $33,194 formerly determined by him to be attached machinery were all personal property. No reasons for the concession were given, but all of the conceded items weigh less than 2,500 pounds. There doesn't appear to be any other relationship between his concession and the function of the items, their value, their size, or the manner of their attachment to the real estate. In fact, one item on which no concession was made was a freestanding item weighing 2,500 pounds. I assume that the commissioner determined that this was a "ponderous" item. This conclusion seems inappropriate in light of the fact that many family cars weigh 4,000 or 5,000 pounds and truly ponderous machines weighing many tons are commonplace.

The statute requires that the machinery be used or usable in manufacturing a marketable product. Under the majority's construction of the statute, it is difficult to conceive of many items of machinery which would not weigh more than 2,500 pounds and yet would be used in a manufacturing process. It is not without significance that the statute exempts machinery in addition to tools. An interpretation of the statute restricting the machinery qualifying for the exemption to a negligible class of machin-

---

[2] See footnote 10, *infra*.

ery leads to an unreasonable if not an absurd result. Minn. St. 645.17(1) points out that such a result is never intended by the legislature.

The majority, by prescribing the arbitrary weight of 2,500 pounds as the dividing line between real and personal property, allows an exemption for few items of machinery which would be of any tax consequence in providing property tax relief. Even a limited awareness of modern industry would indicate that the valuation of such property would be minimal in relation to the total tax burden on a taxpayer. For example, the claimed market value of the property conceded by Abex to be taxable as part of the real estate is $37,924 and as attached machinery is $26,454. The claimed market value of property conceded by the commissioner to be exempt is merely $46,123 in comparison to the claimed market value of property in the amount of $1,295,420 which the commissioner contends is taxable.

By exempting, at the option of the taxpayer, either inventories or, in the alternative, tools and machinery which by law is considered personal property, the legislature intended to grant the taxpayer the greater of the exemptions available under these categories.[3] I do not believe the legislature intended to grant greater tax relief to those industries which happen to have extensive inventories. Nor do I believe the legislature intended to prefer those industries which have extremely valuable but very light machinery in their operations; for example, companies having very expensive computers which are relatively light but may be valued in the hundreds of thousands of dollars. Such gross inequities between various industries based solely on the weight of the machinery imperative to a particular manufactur-

---

[3] The legislature in 1971 granted even greater tax relief by amending Minn. St. 1969, § 272.02(11), so as to allow a taxpayer an exemption from taxation for inventories in addition to tools and machinery. Ex. Sess. L. 1971, art. XXII, § 3.

ing operation lead to an unreasonable result which the legislature would not have intended.

The wording of the statutes in question also supports a conclusion that the disputed property does qualify for the tax exemption. In order to qualify for exemption, tools and machinery used or usable in the manufacturing of marketable products must "by law" be considered as personal property. Minn. St. 272.03 defines real and personal property for the purposes of taxation. Subd. 1 of this statute reads in part:

"For the purposes of taxation, 'real property' includes the land itself and all buildings, structures, and *improvements or other fixtures* on it, and all rights and privileges belonging or appertaining to it * * *." (Italics supplied.)

The determinative issue here is whether the disputed property is "by law" real or personal property. In resolving this point, it is helpful to analyze the wording of the definitional statute. If this property consists of "fixtures" as that word is used in defining real property, it then would be real property. In the statute the phrase "other fixtures" follows the specific enumeration of "buildings," "structures," and "improvements" as property which is considered as realty. "Other fixtures" is included within the same clause and is necessarily appended to the term "improvements." It is not without importance that the legislature prefaced the term "fixtures" by the word "other" in this clause.

It is a well-known maxim of statutory construction that words are to be construed with reference to the words with which they are associated. See, State v. Suess, 236 Minn. 174, 52 N. W. 2d 409 (1952); Dike v. State, 38 Minn. 366, 38 N. W. 95 (1888). It is noted that the types of property enumerated before "other fixtures" imply a permanent addition or betterment to the freehold. These types of additions become a component or integral part of the realty itself. It is believed that the legislature intended to include within the term "other fixtures" only those fixtures having the same characteristics as the enumerated items appear-

ing before that term, namely, those fixtures of permanent benefit to the realty itself. Stated another way, the legislature, by prefacing "fixtures" with the word "other," intended the real property was to include buildings, structures, improvements, and other similar fixtures. If the legislature had intended to include all fixtures, regardless of their nature, they would not have appended the word "other" to fixtures. See, Rhone v. Loomis, 74 Minn. 200, 77 N. W. 31 (1898); State v. Walsh, 43 Minn. 444, 45 N. W. 721 (1890). Cf. Russell v. Golden Rule Min. Co. 63 Ariz. 11, 159 P. 2d 776 (1945) ("other permanent improvements" did not include machinery but only property of the character of that which preceded the term); Brooklyn Edison Co. Inc. v. Davidson, 269 N. Y. 48, 198 N. E. 627 (1935) ("other fixtures" included only fixtures of the type previously mentioned, namely, electrical conduits).

At a minimum, I believe that the wording of the statute militates against the construction of fixtures for tax purposes as including that nebulous class of fixtures referred to by the majority as "nontemporary." On the contrary, the statute implies that only those fixtures of an unquestionably permanent nature are to be included as real property. Such permanent fixtures would include articles such as heating, lighting, or plumbing equipment which can be said to have been incorporated to the betterment of the realty itself as opposed to the current use of the realty. This interpretation of the exemption statute is more capable of uniformity in taxation, which the legislature must have intended. Taking this interpretation as a guideline in determining what should be taxed, the assessor would include only those fixtures as real property which are obviously associated with the realty itself rather than attempting to resolve the status of property of a more equivocal nature.

The incorporation of all "nontemporary," as opposed to permanent, fixtures within the definition of real property is also unsupported by decisions of this court or courts of other jurisdic-

tions. On the contrary, the case law stresses than an article must be *permanently* attached to become a fixture. In Wolford v. Baxter, 33 Minn. 12, 18, 21 N. W. 744, 745 (1884), we stated in regard to heavy machinery:

"* * * Ponderous articles, although only annexed to the land by the force of gravitation, if placed there with the manifest intent that they shall *permanently* remain, may be fixtures." (Italics supplied.)

See, also, Shepard v. Blossom, 66 Minn. 421, 69 N. W. 221 (1896); Farmers' Loan & Trust Co. v. Minneapolis Engine & Machine Works, 35 Minn. 543, 29 N. W. 349 (1886). Therefore, including within the meaning of fixtures anything that is not permanently attached to the realty is improper.

In 1971 the legislature amended the definition of real property so as to leave no doubt that this interpretation was meant under the former definition. The following sentence was added to Minn. St. 1969, § 272.03, subd. 1, by Ex. Sess. L. 1971, c. 31, art. XVII, § 1:

"A building or structure shall include the building or structure itself, together with all improvements or fixtures annexed to the building or structure, which are integrated with and of permanent benefit to the building or structure, regardless of the present use of the building, and which cannot be removed without substantial damage to itself or to the building or structure."

Interestingly, this sentence was added subsequent to a number of Minnesota district court decisions construing the meaning of the word "fixtures," and it also followed the Tax Court decision of August 31, 1970, in the present case. The court in each of those cases concluded that the heavy machinery in dispute did not fall in the classification of fixtures within the meaning of the tax statutes. I refer to those decisions only for the rationale used in reaching the respective conclusions. The trial judges reasoned that the machinery was easily disassembled and moved to different locations and that a used-machinery market was available

for such ponderous machinery just as with other types of machinery or equipment.[4]

The Tax Court in the present case similarly found that all of the disputed machinery was easily removable, that it could be sold on the used-machinery market, and that in fact certain of the items had been acquired in such a manner and had been moved from their former location or had been relocated from other plants of the taxpayer.[5] In concluding that this machinery did not fall in the classification of fixtures, the Tax Court formulated a test for determining what is real property which employed substantially similar language as that incorporated into the statutory definition by the 1971 amendment.[6] In light of these judicial constructions of the statute, I believe the legis-

---

[4] In re Bituminous Roadways, Inc. No. 667597 (Dist. Ct., Hennepin County, June 8, 1971) (a heavy asphalt batch plant); In re Red Wing Pub. Co. No. 25579 (Dist. Ct., Goodhue County, June 4, 1970) (22 1/2-ton printing press). A similar decision was rendered subsequent to the 1971 amendment. Minneapolis Star & Tribune Co. v. County of Hennepin, No. 667349 (Dist. Ct., Hennepin County, December 3, 1971) (printing presses and related machinery weighing 25 tons each).

[5] The following equipment is among that which was moved from other locations: (1) Bond system (20,000 pounds per unit); (2) shakeout (30,000 pounds); (3) Eddystone Sand System (633,970 pounds); (4) wheelabrator (20,000 pounds); (5) 350-ton press (70,000 pounds).

[6] It is also observed that prior to the passage of Ex. Sess. L. 1971, c. 31, which included the amendment to Minn. St. 1969, § 272.03, subd. 1, an omnibus tax bill had been passed by the legislature which contained a redefinition of real property similar to the majority's interpretation. Journal of the House, Ex. Sess. 1971, pp. 357, 427, 438. The bill, however, was vetoed by the governor in its entirety basically because it did not provide enough tax relief for individuals and farmers. Id. p. 471. It is interesting, however, that the vetoed bill defined fixtures to include ponderous machinery installed for semipermanent use. The definition of real property as contained in the 1971 amendment compels an opposite result, as has been pointed out previously in this dissenting opinion.

lature amended the statute merely to clarify what it had meant originally rather than to change its former meaning.

The majority lays much stress upon the use of the word "fixtures" in the definition of real property and its absence from the definition of personal property in Minn. St. 272.03, subd. 2, which reads in part:

"For the purpose of taxation, 'personal property' includes:

(1) All goods, chattels * * * and effects."

This definition is comprehensive and broad enough to include the somewhat imprecise word "fixtures." For example, Black, Law Dictionary (4 ed.) defines these articles of property as follows:

"GOODS. A term of variable content. It may include every species of personal property or it may be given a very restricted meaning. * * * In contracts, the term 'goods' is not so wide as 'chattels,' for it applies to inanimate objects, and does not include animals or chattels real, as a lease for years of house or land, which 'chattels' does include." Id. p. 823.

"CHATTEL. An article of personal property; any species of property not amounting to a freehold or fee in land. * * * *Things which in law are deemed personal property, they are divisible into chattels real and chattels personal.*

\* \* \* \* \*

"The term 'chattel' is a more comprehensive one than 'goods,' as it includes animate as well as inanimate property. * * *

\* \* \* \* \*

"Personal Chattels

"Movable things. * * *

\* \* \* \* \*

"Real Chattels

"Such as concern, or savor of, the realty, such as leasehold estates; interests issuing out of, or annexed to, real estate; such chattel interests as devolve after the manner of realty. * * * An interest in real estate less than freehold * * *." Id. p. 299.

"EFFECTS. Personal estate or property. * * * Movable or chattel property of any kind. * * *

"In this sense, the term is more comprehensive than the word 'goods,' as *including fixtures* and choses in action, which 'goods' will not include. * * *

"Also, every kind of property, real and personal." Id. p. 605. (Italics supplied.)

Cf. State v. Harvey, 141 Mo. 343, 42 S. W. 938 (1897); In re Reimer's Estate, 159 Pa. 212, 28 A. 186 (1893). Putting together the plain inference that the phrase "other fixtures," as used in the definition of real property, was intended to mean improvements, and the fact that the phrase "all goods, chattels * * * and effects," as used in the definition of personal property, is more than adequate to include fixtures, it seems that the legislature expressly covered the situation.

The majority also makes reference to the fact that the definitional statute draws no distinction between trade fixtures and other fixtures. However, the exempting statute refers to machinery which by law is considered personal property. Trade fixtures have for years been considered by case law to be personal property.

In addition, the very tax statutes here being construed treat similar property differently in certain instances. Minn. St. 272.03, subd. 2(3), includes within the definition of personal property:

"All improvements upon land the fee of which is vested in the United States, and all improvements upon land the title to which is vested in any corporation whose property is not subject to the same mode and rule of taxation as other property."

An example of the type of corporation to which the latter portion of this subsection refers is found in the case of railroads, whose property is not subject to the same mode and rule of taxation as other property. See, Minn. St. 295.05 to 295.14. Because of this

provision in § 272.03, subd. 2(3), an improvement upon certain lands is considered personal property while the same improvement is normally considered real property. Therefore, ponderous machinery owned by a tenant on land leased from a railroad would by law constitute personal property and, presumably, if used in the production of marketable products, would be exempt at the option of the tenant. Would it be reasonable to assume that the legislature intended to treat any differently trade fixtures of a tenant, which by case law have been considered to be personal property?

The commissioner contends that prior to the 1967 enactment of the exemption for tools and machinery it was unimportant to determine whether machinery was real or personal property because it would be included in class 3 property and would be assessed at 33 1/3 percent in either case. Minn. St. 1965, § 273.13, subd. 4. Although it is true that "tools, implements and machinery, whether fixtures or otherwise" were all within class 3 and were assessed the same, it has always been an important consideration to distinguish between real and personal property for the collection of taxes. Taxes on real estate are enforceable only against the land and not against the landowner personally. Taxes on personal property are not only secured by a lien on the property, but are also enforceable in personam. In re Petition of S.R.A., Inc. 213 Minn. 487, 7 N. W. 2d 484 (1942). The commissioner apparently recognized the importance of appropriately listing machinery as either real or personal property some years prior to the tax relief statutes when he directed county assessors in a 1964 bulletin to review their classifications of property so as to assure that personal property was correctly listed. Minn. Property Tax Bull., Vol. 2, No. 2 (Feb. 1964).[7]

---

[7] In Minn. Property Tax Bull., Vol. 2, No. 2 (Feb. 1964), the commissioner said in part: "One of the most difficult areas of classification is to distinguish between machinery that is an integrated part of a building, machinery that is attached to real estate and that which should be listed as personal property.

The consequences of an incorrect listing as attached machinery or as personal property can be demonstrated by an example. If machinery attached to the realty were incorrectly listed as personal property, no real estate taxes would be collected against it. Any claimed personal property tax lien against the property would be lost if the machinery were sold with the real estate because it would in fact be real estate. The taxes may be lost entirely if the former owner is judgment-proof.

Thus, an incorrect listing of property as attached machinery or as personal property had potentially significant consequences in the enforcement of delinquent taxes. Therefore, whether property was real or personal was important prior to 1967 even though the assessed rate of 33 1/3 percent was the same in either case. It has been the long-continued practice of county assessors to list heavy machinery as personal property.[8] It was not until the commissioner issued a new directive to the county assessors after the passage of the Tax Reform and Relief Act of 1967 that they altered their former practice of listing such machinery as personal property. Minn. Property Tax Bull., Vol. 3, No. 7 (Mar. 1968).

The case of State v. Clarkson Coal & Dock Co. 188 Minn. 106, 246 N. W. 538 (1933), demonstrates that this court and the taxing authorities have always viewed this type of heavy industrial machinery as personal property for the purpose of taxation. In that case this court concluded that massive coal bridges were

* * * * *

"It is important that assessors review their classification of personal property to be sure that the property in their district is correctly classified."

[8] For example, in both Minneapolis Star & Tribune Co. v. County of Hennepin, footnote 4, *supra*, and In re Bituminous Roadways, Inc., footnote 4, *supra*, it was specifically observed that the heavy machinery in question had been reported as personal property prior to the 1967 amendment.

included in class 3 property, as "tools, implements, and machinery, whether fixtures or otherwise." 188 Minn. 109, 246 N. W. 539. During the course of the opinion, the court referred to the bridges as personal property and the proceedings were for the enforcement of personal property taxes. Although in that case the question of whether the property was real or personal in nature was not in issue, the nature of the property did determine the basis upon which proper assessment should be made.

In another context, this court has referred to heavy machinery as personal property. In Borgelt v. City of Minneapolis, 271 Minn. 249, 135 N. W. 2d 438 (1965), an asphalt mixing plant composed of several separate units operating together was described as personal property. At first glance, it would appear that this was mere dictum. However, an examination of the briefs shows that whether the asphalt plant was realty or personalty was important for determining whether the method of financing by the city was appropriate. Because of insufficient evidence and lack of findings on the financing issue, the case was remanded.

These cases and practices are cited because it is upon this background that the legislature provided an exemption for tools and machinery which is considered personal property. These cases and the assessors' practices demonstrate that property of the character here in dispute has been commonly viewed as personal rather than real property.

3. In addition to the statutory interpretation and background, an analysis of the decisions of this court relating to the doctrine of fixtures shows that the items in question are not a part of the real estate. The criteria to consider in analyzing whether an article is a fixture within the meaning of the tax statute were most satisfactorily enumerated in Wolford v. Baxter, *supra*. Although the nature of an article may depend somewhat upon the factual setting, the discussion in Wolford concerns the constituent features of fixtures generally and is, therefore,

guiding in the present case. See, White Enamel Refrigerator Co. v. Kruse, 121 Minn. 479, 483, 140 N. W. 114, 116 (1913).

Analysis of the Wolford case reveals that two prerequisites are required to convert a chattel into real property. Both annexation to the realty and an intention to make the article a permanent part of the freehold must be present. Neither element alone is sufficient to convert a chattel into a fixture.

The annexation can be either actual or constructive. Wolford points out that constructive annexation is perhaps present when: (1) There is a very slight or no physical connection but the structure housing the article was specially constructed for it and the structure without the article would be incomplete for the purpose for which it was erected; or (2) the building is not specially constructed but the article is ponderous and is placed there with the intent that it *permanently* remain.

Wolford also indicates that to establish the second element, intention, there must be an objective manifestation that the chattel was meant to become a permanent accession to the realty. Six factors are listed which should be considered in discovering this intention, of which the following are important in this case: (1) The fact or type of annexation; (2) the nature of the article annexed; (3) the adaptability of the article to the use of the land; (4) the purpose of the annexation.[9] Although all of these factors need not be present to establish the requisite intention, each should be considered along with other objective evidence under the circumstances and should be weighed and balanced against each other.

The majority adopts the commissioner's standard first set after the Tax Court decision in this case when he dropped from his appeal to this court all items weighing less than 2,500 pounds. Since some of the items remaining in dispute are relatively light

[9] The other factors—relation of annexor to the freehold and subjective intent of the annexor—are not of importance to the discussion of this case.

for use in modern industry, I cannot agree that there is any constructive annexation of these articles. Nor should these articles be considered as actually annexed simply because, in some cases, they are bolted to secure them for stability and to prevent vibration.

Although there may have been a constructive annexation of the extremely ponderous machinery, I must disagree that there was an objective manifestation that this disputed property was intended to become a permanent accession to the realty. The Wolford case emphatically points out that ponderous articles annexed to the realty only by their own weight may become fixtures only "if placed there with the manifest intent that they shall *permanently* remain." 33 Minn. 18, 21 N. W. 745. (Italics supplied.) I cannot detect the slightest hint in Wolford or any other case that the intent to make a permanent accession to the freehold can be more accurately stated as an intent to make a nontemporary accession.

It cannot be doubted that the fact that property is attached to the realty provides some objective evidence that it was intended to become a part thereof. However, the degree of importance to attribute to this factor is limited by the character or type of annexation. If property cannot be detached from the realty without causing substantial injury to itself or to the land, an intention to make the chattel a part of the freehold is objectively manifested. Unless we attach some mystic significance to the fact that the property is secured to the building solely by its own weight or is secured by bolts to promote stability and control vibration, such attachment forms the weakest manifestation of intention to make it a part of the realty.

The majority apparently finds evidence of intent because of the ponderous nature of the disputed property. In implying intention from the nature of the property being annexed, I believe the Wolford opinion meant that there be something more than a determination of the mere physical attributes of the chattel; one must look to the kind or character of the article. For

example, an intention can be implied when an article is attached which is commonly accessory to the realty itself. Such items normally would include heating and plumbing utilities, air conditioning, electrical wiring, and elevators. However, when the nature of the chattel is not accessory to the realty itself but only to its present occupant, it implies little, if any, intention that the article is being made a permanent addition to the freehold.

Adaptability of the annexed property to the use of the land is perhaps the most revealing of the criteria for manifesting intent. The majority finds that the disputed property was necessary to the continuing business operation of the taxpayer and that it had been installed for its remaining useful life or until the use of the building should unexpectedly change. From this it is concluded that the machinery was adapted to the use of the land. The pertinent question, however, is not the length of time a machine will be or can reasonably be anticipated to be used in a building, but its utility and value to the land if and when the present operation is terminated. The Wolford case refers to adaptability to the realty itself rather than to the use of the business conducted upon the land. The requirement is that the article be placed upon the realty with the intention to make it a "permanent accession to the freehold" rather than that it merely be placed there for chattel use. 33 Minn. 19, 21 N. W. 746.

I believe the Wolford case requires that the chattel must be adaptable to the general use to which the land has been adapted. In this case the realty is devoted to an industrial use as opposed to commercial, residential, or agricultural pursuits. The building is adaptable to many varied industrial uses, and any articles which would also be adaptable to use by any industrial occupant of the building would be considered fixtures. Under Wolford, adaptability to the use of the land does not mean the present or current use of the realty. In this case, the special or present use of this realty is as a foundry. Therefore, machinery which is usable only in foundry operations is not devoted to the use of the

realty itself but only to the business conducted upon the land. This is insufficient to establish an intent to make the disputed property a part of the freehold.

The distinction between machinery devoted to the use of the realty as opposed to the business conducted thereon is stated well by the Ohio Supreme Court. In Zangerle v. Standard Oil Co. 144 Ohio St. 506, 515, 60 N. E. 2d 52, 57 (1945), that court observed that the cases in that state—

"* * * have clearly drawn a fundamental distinction between annexations which would be integrated with and a permanent benefit to the land regardless of its future use, such as a heating furnace, motive-power machinery, water systems, drainage and sewer systems, accessory to the land and not to the business carried on; and annexation of special-purpose, manufacturing or processing machinery and structures which could be used only in a particular business or industry and not in any normal use to which the land might be devoted, and hence accessory to the business in which they function and not accessory to the land. *The decisive test of appropriation is whether the chattel under consideration in any case is devoted primarily to the business conducted on the premises, or whether it is devoted primarily to the use of the land upon which the business is conducted.*" (Italics supplied.)

Although there may be cases in other jurisdictions in disagreement, this line of judicial thought is persuasive and is reiterated in 35 Am. Jur., Fixtures, § 101, as follows:

"On the other hand, machinery may be held personalty where no intent appears that it should become a part of the realty, and it was *not specially designed for the building, but is of a common lot and description,* especially where it is capable of removal without material injury to it or to the building and may be used elsewhere. The parties may likewise, by their conduct, fix the status of machinery as personalty, as where they bring it upon

the premises for a mere temporary purpose or attach it only in such a manner as will steady it in place during the period of its use." (Italics supplied.)

This distinction can also be found in language used by this court in White Enamel Refrigerator Co. v. Kruse, 121 Minn. 479, 485, 140 N. W. 114, 117 (1913):

"The nature of the thing annexed and its adaptability to the use of the realty—which in this case we will consider to be the store room—constitute the next element to be considered. It cannot be questioned that the [2 to 3 ton] refrigerator was adapted to the use of the room as a flower store, for it was built for use in such business while being conducted in this room; but no less certain it is that this adaptability was of limited scope, whereas there is nothing to show that the room was not fitted for many purposes other than those for which it was leased. We think it fair to assume that *the room was suited to any of the purposes for which one of its size and similar location might ordinarily be used.* In the matter of character and adaptability, therefore, we think the refrigerator partook of the nature of a mere trade fixture." (Italics supplied.)

Although that case involved rights between a landlord and tenant, the analysis of adaptability to the use of the realty under Wolford is instructive.

The building involved in the present case may also be utilized for many industrial uses, and the foundry machinery in dispute is not the type of property normally found in or necessary to the use of an industrial building. While the machinery may be necessary to a foundry operation, it is not necessary to the industrial building itself to which the land has been adapted. The items of property in dispute in the present case would be of little, if any, use to a subsequent occupant of this building improved for an industrial plant unless that occupant also happened to be in the

foundry business.[10] Yet, the machinery would be of considerable use in other foundry operations elsewhere and could be moved to such locations in a manner similar to that by which it was transported to its present location. Indeed, a number of items so transported by Abex were used machinery, including the Eddystone Sand System. In this day and age very ponderous equipment can be moved to different locations with relative ease.

I must, therefore, agree in substance with the test formulated by the Tax Court:

"* * * [T]he correct test is whether the machinery involved is devoted primarily to the business which is being conducted on the premises, as distinguished from being devoted primarily to the general use of the land or building upon which the business is being conducted."

Rephrasing this, the test is whether an article of property is such that it could be used by any occupant of the freehold regardless of the kind of business being conducted on the premises. If it is so adaptable, it is a fixture and thus real property. It is personal property and not a fixture, however, if the article is devoted primarily to the particular business being conducted on the premises.[11]

Finally, it is observed in this regard that it would be unusual to find property which cannot be said to be devoted to the present business use of the land. Thus, for all practical purposes, very

---

[10] The majority finds a purported inconsistency in condoning the concessions by Abex that certain property was fixtures. Although these items, with the possible exception of the dust control system, would not be of use to every industrial occupant of the building, an intention to make a permanent accession is adequately manifested by the character of the annexation in that these items could not be removed without substantial damage to such property itself or to the building. Therefore, it is completely consistent with this opinion.

[11] It is observed that this test is in substance the same as the amended definition of real property in Minn. St. 272.03, subd. 1, adopted by the 1971 legislature.

little, if any, machinery can qualify for the exemption under the majority decision because machinery will presumably not be found in a factory unless it is connected with the business use of the land. Furthermore, the legislature limited the personal property to be exempted to that used in the production of marketable products and therefore envisioned that the machinery to be exempted would be devoted to the business use of the land.

The final criterion to be considered in establishing intention is the purpose sought by the annexation. Wolford distinguishes between attachment for the purpose of using it as a chattel and attachment to incorporate the article as a "permanent accessory to the building." 33 Minn. 20, 21 N. W. 746. In the present case, the introduction of the disputed items of property into the building was for the purpose of using them in the foundry operations as chattels and not to make them accessories to the structure itself. The purpose of any fastening to the building of certain of these items was solely for stability in operating them in the business as opposed to adding value to the building.

When all these factors are weighed together and balanced against each other, I do not believe the requisite intention to make the disputed property a part of the freehold has been established. Indeed, it appears that the contrary was intended.

The majority also finds support from two other decisions of this court. In Pond Machine Tool Co. v. Robinson, 38 Minn. 272, 37 N. W. 99 (1888), this court held that a 38-ton machine was a fixture for the purposes of establishing a lien against the realty under the mechanics lien statute. The statute in that case provided that one who furnished machinery for the construction or alteration of a manufacturing plant was entitled to a lien. The court found that the machine had been specially designed and manufactured for this plant and that it therefore came within the provisions of the statute. I do not believe the case stands for the principle that all heavy machinery in a manufacturing plant

constitutes fixtures. The decision is clearly distinguishable from the present case.

The majority also relies on Shepard v. Blossom, 66 Minn. 421, 69 N. W. 221 (1896). In that case the court found all items of machinery, except four, were fixtures and subject to a real estate mortgage. From the trial court's finding that the buildings were specifically designed and erected for the machinery, this court apparently found intention to make the machinery an accession. The court held (66 Minn. 423, 69 N. W. 222):

"It sufficiently appears that *the buildings were constructed for the special purpose for which* they were used, that the *machinery was all placed in them for the same purpose,* and that the whole forms one entire plant. Then the intention to make the machinery a permanent part of the plant sufficiently appears." (Italics supplied.)

The Shepard decision merely holds that machines attached to "special-purpose" buildings become fixtures by annexation alone since intention is implied from its incorporation within the specially designed and constructed building. This is distinguishable from the present case where the building was not specially designed or constructed for the foundry business. The relatively minor structural alterations which were made did not affect its general purpose design. As noted previously, this finding of fact by the Tax Court is reasonably supported by the evidence and therefore should remain undisturbed.

For the reasons expressed in this dissenting opinion, I believe that the items of disputed property are not "fixtures" as used in the tax statute and therefore are personal property within the meaning of Minn. St. 1969, § 272.02(11)(b).

I would affirm.

KNUTSON, CHIEF JUSTICE (dissenting).

I agree with the dissent of Mr. Justice Kelly. I fail to see how property can be classified as personal property or as part of the real estate by its weight, which in essence is what the majority

opinion does. If the legislature wishes to make that distinction, it can easily do so by amending the law. This, in fact, it did by adopting Ex. Sess. L. 1971, c. 31, art. XXII, § 3 (the portion relevant hereto now coded as Minn. St. 1971, § 272.02, subd. 1 [11]), after our decision in the case of In re Answer of Minnesota Power & Light Co. 289 Minn. 64, 182 N. W. 2d 685 (1970). It seems to me that for the court to make this classification in view of the plain language of our statute is nothing but judicial legislation. I do not think that is our function.

MR. JUSTICE TODD took no part in the consideration or decision of this case.